**[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 101.]**

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 67, APPELLANT, *v.*
CITY OF COLUMBUS, APPELLEE.

**[Cite as *Internatl. Assn. of Firefighters, Local 67 v. Columbus*,
2002-Ohio-1936.]**

*Employer and employee—Arbitration—Arbitrator exceeded his authority by
relying on rules extraneous to the collective bargaining agreement to
determine the eligibility of union employees to receive paid injury leave
for carpal tunnel syndrome, when—Arbitration award vacated, when—
R.C. 2711.10(D), applied.*

(No. 01-178—Submitted January 8, 2002—Decided April 24, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-283.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 1} Donald Sherrod and William Russell, two Columbus firefighters,
developed bilateral carpal tunnel syndrome during the course of their duties. As a
result, both men missed work to receive medical treatment. The firefighters applied
for paid injury leave as provided for in Article 24, Section 24.2, of the collective
bargaining agreement ("CBA") entered into on their behalf by Local 67,
International Association of Firefighters, appellant, with the city of Columbus,
appellee. According to this provision, paid injury leave "shall be granted to any
such employee only for injuries or *other disabilities* determined by the Finance
Department Director or designee as caused or induced by the actual performance
of his or her position." (Emphasis added.)

{¶ 2} The firefighters' request for paid injury leave was denied by the
finance director and the Board of Industrial Relations on the ground that carpal

tunnel syndrome was not a disability. The union filed grievances on the firefighters' behalf, contesting the denial of benefits. The grievances were denied.

{¶ 3} Pursuant to the CBA, the parties then submitted the grievances to arbitration. The arbitrator denied the grievances, also finding that the firefighters did not sustain a disability. In reaching this conclusion, the arbitrator relied upon rules promulgated by the city's Board of Industrial Relations that defined the terms "injury" and "disability" as physical damage or a physically restrictive medical condition "caused by an *incident* in the actual performance of the duties of the position." (Emphasis added.) Since carpal tunnel syndrome is not caused by a single traumatic incident, the arbitrator concluded that it was not a disability for purposes of entitlement to paid injury leave.

{¶ 4} The union filed a complaint and an application to vacate the arbitration decision in Franklin County Common Pleas Court. The trial court denied the union's application to vacate the arbitration decision. The court of appeals, in a two-to-one decision, affirmed the trial court's ruling, finding that the arbitrator's decision drew its essence from the CBA. The cause is now before this court upon the allowance of a discretionary appeal.

{¶ 5} The issue in this case is whether the arbitrator exceeded his authority by relying on rules extraneous to the CBA to determine the eligibility of union employees to receive paid injury leave.

{¶ 6} A reviewing court's role in evaluating an arbitration decision is limited to determining whether the award is unlawful, arbitrary, or capricious and whether it draws its essence from the collective bargaining agreement. *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (2001), 91 Ohio St.3d 108, 110, 742 N.E.2d 630. For an award to draw its essence from the CBA, there must be a rational nexus between the agreement and the award. *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v.*

*Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

{¶ 7} The union asks us to vacate the arbitration decision. R.C. 2711.10(D) provides that an arbitration award shall be vacated if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The union maintains that by ignoring the plain meaning of the CBA, and instead relying on a definition of "disability" extraneous to the contract, the arbitrator exceeded his powers.

{¶ 8} In particular, the union argues that under the plain language of Article 24, Section 24.2 of the CBA, paid injury leave is to be granted whenever an employee suffers a work-related injury or disability, which would include carpal tunnel syndrome. However, under the board's definition of "disability," employees seeking paid injury leave must demonstrate an additional element, *i.e.*, that their injuries or disabilities were caused by *an incident* in performance of work-related duties. Since this additional requirement was not bargained for, or made part of the CBA, the union maintains that the arbitrator exceeded his authority and that the award does not draw its essence from the CBA.

{¶ 9} In contrast, appellee city contends, as the majority of the court of appeals held, that the arbitration award draws its essence from the CBA. The city argues that there is a rational nexus between the CBA and the award in that Section 24.8 of the CBA authorizes the director of finance to "*make necessary rules*, devise forms, keep records, investigate cases, and make decisions *on allowance of pay for time off duty as provided by this Article*, subject to the approval of the Board of Industrial Relations." (Emphasis added.) Since Section 24.8 authorizes the finance director to "make necessary rules" regarding injury leave, the city believes that the arbitrator was warranted in looking at those rules, promulgated by the Board of Industrial Relations, to better understand what is meant by the terms "injuries" or "other disabilities" for purposes of paid injury leave.

**{¶ 10}** We disagree with the city's position. An arbitrator is confined to interpreting the provisions of a CBA as written and to construe the terms used in the agreement according to their plain and ordinary meaning. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71. Even though the CBA does not define what is meant by the term "other disabilities," this does not give the arbitrator the authority to rely on the city's own definition of that term. Instead, since the CBA is silent on this point, the term "other disabilities" must be given its ordinary meaning. Black's Law Dictionary (7 Ed.1999) 474 defines "disability" as "[t]he inability to perform some function; an objectively measurable condition of impairment, physical or mental." It further defines "physical disability" as "[a]n incapacity caused by a physical defect or infirmity, or by bodily imperfection or mental illness." It is clear that the firefighters' carpal tunnel syndrome falls within the ordinary definition of a disability.

**{¶ 11}** This conclusion is further supported by the fact that the CBA's injury-leave provision (Section 24.2) expressly provides that certain disabilities (cardiovascular, respiratory, and pulmonary) are presumed to be service-related. These disabilities, like carpal tunnel syndrome, are not necessarily caused by a single incident. Instead, firefighters may develop these disabilities, particularly respiratory or pulmonary ailments, after they have sustained repeated exposure to smoke. The inclusion of these disabilities strengthens the union's position that the term "disability" was never intended to include the requirement that the condition was caused by an incident. As Judge Tyack stated in his dissenting opinion in the court of appeals, "The presumption set forth in Section 24.2 clearly conflicts with the definition utilized by the Director of the Finance Department * * *. I do not believe that the city can agree to one thing at the bargaining table and then take the benefits away with rules and regulations which are narrowly construed."

**{¶ 12}** Moreover, contrary to the city's position, Section 24.8 of the CBA does not give the arbitrator the right to rely on rules promulgated by the city itself to redefine terms used within the CBA. Although Section 24.8 authorizes the finance director to "make rules" relating to injury leave, we believe this provision simply authorizes the city to develop the procedural mechanism for determining injury-leave claims. It should not be read to authorize the director to unilaterally change the terms of the injury-leave provision of the CBA or redefine what is meant by the terms "injury" and "other disability." As this court has previously emphasized, an arbitrator may not create a contract of his own by imposing additional requirements not expressly provided for in the agreement. *Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 183, 572 N.E.2d 71. Nevertheless, this is precisely what the arbitrator did in this case. By ignoring the plain language of Section 24.2 and by relying on rules of the city's Board of Industrial Relations, the arbitrator went outside the scope of the CBA and unilaterally abrogated the bargained-for provision.

**{¶ 13}** In *Southwest Ohio Regional Transit Auth., supra,* 91 Ohio St.3d 108, 742 N.E.2d 630, we reiterated the point that a CBA is limited to the provisions bargained for and that an arbitrator may not apply extraneous rules to the agreement, where those rules were not bargained for and are contrary to the plain terms of the agreement itself. In *SORTA,* a union employee was terminated based upon the employer's "zero-tolerance" drug policy, which called for automatic discharge. The union filed a grievance on the employee's behalf. The arbitrator found that SORTA's drug policy conflicted with the terms of the CBA, which provided that employees could be terminated only with "sufficient cause." In upholding the arbitrator's award, we stated:

**{¶ 14}** "While SORTA's drug policy may be facially valid, we find that SORTA did not have the right to *unilaterally* adopt automatic termination without possibility of reinstatement as a sanction for testing positive, because such a

sanction conflicts with the 'sufficient-cause' requirement for dismissal found in Section 3(b) of the CBA. * * * [A]llowing SORTA to enforce automatic termination would allow an employer to unilaterally adopt a sanction that conflicts with the sufficient-cause requirement for dismissal that was negotiated into the CBA, thereby undermining the integrity of the entire collective bargaining process. The proper avenue for SORTA to adopt such a sanction would be through the collective bargaining process, not through a unilateral decision." (Emphasis sic.) *Id.*, 91 Ohio St.3d at 108, 742 N.E.2d 630.

{¶ 15} Just as the employer in *SORTA* attempted to unilaterally adopt a rule contrary to the terms of the CBA, the city's rules were applied even though the definition contained in those rules contravened the plain language of the CBA's injury-leave provision. We find that by applying the extraneous definition of "disability," the arbitrator imposed an additional requirement on employees seeking paid injury leave, thereby violating the plain terms expressed in the agreement. As a result, we conclude that the decision is not rationally derived from the terms of the agreement and that the arbitrator exceeded his powers.

{¶ 16} Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and vacate the arbitration decision.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

*Thompson, Hine & Flory, L.L.P., William C. Moul* and *Bonnie I. O'Neil*, for appellant.

*Janet E. Jackson*, Columbus City Attorney, and *Alan P. Varhus*, Assistant City Attorney, for appellee.

_____