OPINION
{¶ 1} The plaintiff-appellant, the city of Lima ("the City"), appeals from a decision of the Allen County Court of Common Pleas which upheld an arbitration award in favor of the defendant-appellee, Fraternal Order of Police, Ohio Labor Council, Inc ("FOP"). The arbitration award reinstated the employment of Officer Mark Frysinger to the Lima Police Department ("LPD").
 FACTUAL BACKGROUND {¶ 2} On December 20, 2000, the City informed Frysinger in writing that it was conducting an investigation into whether he unlawfully entered the residence of Harold and Cheryl Bradford. The investigation arose out of a citizen's complaint lodged by Cheryl, who alleged that Frysinger entered her home without permission and without a warrant.
 {¶ 3} Frysinger was investigating a domestic violence incident on the evening of December 6, 2000. The incident involved an acquaintance of the Bradfords. After questioning Harold and Cheryl at the door of their home as to the whereabouts of the domestic violence suspect, Frysinger entered the home without permission and arrested Harold for obstructing official business. Another officer entered the home after Harold's arrest in search of Harold and Cheryl's son, Tyler. This fact would later weigh significantly in the mind of the arbitrator. Tyler was arrested and charged with two counts of disorderly conduct.
 {¶ 4} Pursuant to the investigation, an extensive interview was conducted of Frysinger during which he presented his account of the December 6, 2000 events. Other witnesses were also interviewed including Cheryl and Harold Bradford, their children, and a visitor to the home.
 {¶ 5} After conducting additional pre-disciplinary interviews, the City terminated Frysinger's employment on March 26, 2001. The next day, Frysinger filed a grievance in accordance with the procedure set forth in Article 8 of the Collective Bargaining Agreement ("CBA") between the FOP and the City. Through the grievance filing, Frysinger protested his termination and sought reinstatement of his position with full back pay and benefits.
 {¶ 6} An arbitrator was selected by the City and the FOP pursuant to the CBA. The arbitrator conducted an arbitration hearing on October 9, 2001 and November 13, 2001. In his decision subsequent to those hearings, the arbitrator found that the City did have cause to dismiss Frysinger from the police force. However, the arbitrator ruled that, because the City did not pursue a similar action against the officer who entered the Bradford home in search of Tyler, any disciplinary action against Frysinger would not meet the CBA's standard of "just cause" for such discipline. As a result, the arbitrator issued his decision and award on April 22, 2002 which ordered the City to reinstate Frysinger.
 {¶ 7} Thereafter, the City filed a timely motion with the Allen County Court of Common Pleas to vacate the arbitration award, and the FOP filed an application with that court to confirm the award. Deciding the matter on the briefs, the common pleas court denied the City's motion to vacate the award and ordered Frysinger's reinstatement in accordance with the arbitration award.
 {¶ 8} Appellant now appeals asserting three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in concluding the arbitrator was not guilty ofmisbehavior by which the rights of the city have been prejudiced.
 ASSIGNMENT OF ERROR NO. II The trial court erred in concluding the arbitrator did not exceed hispower.
 ASSIGNMENT OF ERROR NO. III The trial court erred in concluding the arbitrator's ruling did notviolate public policy
 ANALYSIS {¶ 9} For purposes of clarity and brevity, we will address the City's assignments of error together. The City argues that the trial court erred when it ruled that there was a rational nexus between the CBA and the award granted by the arbitrator. The City also maintains that the arbitration award violates public policy.
 {¶ 10} Generally, Ohio courts must give deference to an arbitrator's award and presume the validity thereof.[1] A challenge to an arbitration award can be made only through the procedure set forth in R.C. 2711.13 and only for the reasons enumerated in R.C. 2711.10 and2711.11.[2] A court's jurisdiction to review arbitration awards is thus statutorily restricted; it is narrow and limited.[3]
 {¶ 11} R.C. 2711.13 provides:
After an award in an arbitration proceeding is made, any party to thearbitration may file a motion in the court of common pleas for an ordervacating, modifying, or correcting the award as prescribed in sections2711.10 and 2711.11 of the Revised Code.
 {¶ 12} R.C. 2711.10 provides in part:
In any of the following cases, the court of common pleas shall make anorder vacating the award upon the application of any party to thearbitration if:
 (C) The arbitrators were guilty of misconduct in * * * any othermisbehavior by which the rights of any party have been prejudiced.
 (D) The arbitrators exceeded their powers * * * [.]
 {¶ 13} In reflecting on these statutory directives, the Supreme Court of Ohio has stated that "[i]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts."[4]
 {¶ 14} Although the City alleged arbitrator misconduct under R.C.2711.10(C) as part of its argument, the common pleas court based its decision on whether the arbitrator exceeded his authority under R.C.2711.10(D). An arbitrator exceeds his or her power when the award fails to draw its essence from the CBA.[5] An arbitrator's award draws its essence from the CBA when there is a rational nexus between the agreement and the award and where the award is not unlawful, arbitrary or capricious.[6] "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement."[7]
 {¶ 15} Courts will also not enforce arbitration awards that are contrary to public policy.[8] Where a court uses public policy to overturn an arbitrator's award, that public policy "must be well defined and dominant, and is to be ascertained `by reference to the laws and legal precedents and not from general considerations of supposed public interests."[9] For instance, the dictates of Ohio's criminal statutes constitute public policy decisions made by the General Assembly, and may be used in some instances as a guide to Ohio's public policy in civil litigation.[10]
 {¶ 16} For the City to succeed in its appeal under the statutory framework that guides our decision, it must be shown that either of the reasons relied upon by the common pleas court to affirm the award were faulty. Thus, the City must show that the arbitrator: (1) departed from the essence of the contract; or (2) violated public policy in fashioning a remedy.
 {¶ 17} The arbitrator's decision on the matter was specifically guided by the "just cause" provision in Section 12.2(A) of the CBA.[11]
Pursuant to the CBA, the City has the right to terminate an employee for just cause. The City is permitted to take such corrective measures as deemed necessary on a case-by-case basis.[12] However, unless otherwise restricted by the parties' agreement contained in the CBA, an arbitrator is permitted to review and modify the "just cause" finding used to support both the employer's disciplinary action and the appropriateness of the discipline to be imposed.[13]
 {¶ 18} The parties' contract in the case before us provides no definition for the term "just cause." In such an event, "[a]n arbitrator is confined to interpreting the provisions of a CBA as written and to construe the terms used in the agreement according to their plain and ordinary meaning."[14]
 {¶ 19} In establishing a definition of "just cause," the arbitrator stated:
The concept of just cause, which limits the City's right to disciplinemembers of the bargaining unit, requires more than just that the Employerbe able to establish by the requisite burden of proof that an employeeviolated a rule which the Employer had a right to make. It also meansthat in disciplining the employee the City afford that individual all ofthe due process rights to which he is entitled as well as that the rulemust be even handedly applied.
 {¶ 20} In his analysis, the arbitrator reasoned that "inherent in the concept of just cause is the principal that similarly situated employees will be treated in the same fashion." By the City not pursuing a disciplinary investigation against another officer whom the arbitrator viewed as equally culpable, the arbitrator found that the City failed the second branch of the "just cause" requirement which he determined to be inherent in the CBA.
 {¶ 21} The City vigorously objects to the arbitrator's interpretation that "just cause" for discharge allows a comparative analysis between the actions of the discharged employee and other uninvestigated and undisciplined employees. By bringing the analysis of another officer's actions into play, the City contends that the arbitrator violated R.C. 2711.10(C) and (D). The City argues that the notion of "even-handedness" read into the CBA by the arbitrator infringed upon the express terms of the contract. The City notes that the terms of the CBA required corrective action to be taken on a "case-by-case basis" and that, because the arbitrator considered a matter beyond the scope of the Frysinger arbitration, the arbitrator's decision was other than a "case by case basis" and should be vacated.
 {¶ 22} In essence, the City's argument for vacating the arbitrator's decision is more properly placed under R.C. 2711.10(D), that the arbitrator exceeded his powers, rather than misconduct under R.C.2711.10(C). The City claims that the CBA does not give the arbitrator the authority to decide the propriety of the conduct of another officer who was not a party to the grievance at issue. However, the City cites us to no applicable authority supporting that argument.
 {¶ 23} The City asks us to consider the Ninth District caseWilliams v. Akron[15] in which a police officer, who was dismissed for testing positive on a drug screen, sought to introduce evidence of other officers who also tested positive for drugs and, yet, were punished less severely.[16] In Williams, the unpersuaded court noted that "it is well established that `[a]n employee's discipline must stand or fall on its own merits.'"[17] The Williams case, however, dealt with the admission of additional evidence before the common pleas court on appeal from the Akron Civil Service Commission and, therefore, is distinguishable from the present case.
 {¶ 24} Clearly, the phrase "just cause" is open to more than one reasonable interpretation. In Hillsboro v. Fraternal Order of Police, the Supreme Court of Ohio instructed:
When a provision in a collective bargaining agreement is subject tomore than one reasonable interpretation and the parties to the contracthave agreed to submit their contract interpretation disputes to final andbinding arbitration, the arbitrator's interpretation of the contract, andnot the interpretation of a reviewing court, governs the rights of theparties thereto. This is so because the arbitrator's interpretation of thecontract is what the parties bargained for in agreeing to submit theirdisputes to final and binding arbitration. The arbitrator'sinterpretation must prevail regardless of whether his or herinterpretation is the most reasonable under the circumstances.[18]
 {¶ 25} Therefore, our analysis of the issue before us is limited to the question of whether there is a rational nexus between the terms of the collective bargaining agreement and the award.
 {¶ 26} While the terms of the agreement forbade the arbitrator from adding to, detracting from, modifying or amending the agreement, the CBA did not prohibit the arbitrator from interpreting its provisions.[19]
As part of his interpretation, the arbitrator determined that an element of "just cause" included a consideration of the disparate treatment afforded Frysinger relative to another officer in a similar situation. It appears that the arbitrator engaged in a two step process. First, he found that Frysinger did engage in improper conduct and behavior. Then, he considered whether the discipline was appropriate. In doing so, the arbitrator utilized the broad authority and discretion given to him by the CBA. Finding the discipline imposed by the City to be not evenhanded, the arbitrator modified Frysinger's discipline to be commensurate with that of other actors in the situation. The CBA's provisions regarding the arbitrator's authority, and limitations on that authority are skeletal. Accordingly, the CBA does not restrict the arbitrator from thus proceeding.
 {¶ 27} Consequently, we cannot say that the arbitrator exceeded his authority by considering all of the information that was before him and awarding Frysinger's reinstatement based upon that information. We conclude that the essence of the arbitration award was drawn from the CBA insofar as the award was based upon the "just cause" language of CBA Section 12.2(A).
 {¶ 28} If this were a matter for us to decide de novo on the facts before the arbitrator, we might be inclined to decide differently than did the arbitrator. Indeed, the City's concern about the conduct and integrity of the law enforcement officers it employs — and the resulting effect upon public confidence in the police department overall — is not to be lightly disregarded. We do not disregard it. However, we are not free to interject our own interpretation of the contract in matters such as this.
 {¶ 29} Finally, we consider whether the award contravenes any clearly defined public policy. The City asserts that under R.C. 737.11
the police are required to obey and uphold the law, and the arbitrator's conclusion that Frysinger unlawfully entered a residence without a search warrant is in violation of this doctrine. The City maintains that retaining such an individual as a law enforcement officer disregards the clear public policy of this state. The City also cites Jones v. FranklinCty. Sheriff[20] for the premise that police officers are to be held to a higher standard of conduct than the general public.[21] The arbitrator agreed that police officers are to be held to a higher standard than ordinary citizens but determined that Frysinger should not be subject to a standard higher than that applied to other officers.
 {¶ 30} We do not believe that R.C. 737.11, or Jones, establishes a "dominant and well-defined" public policy either mandating dismissal or prohibiting an arbitrator from using his broad authority to modify a discipline of dismissal under the CBA.[22] The public policy concerns asserted by the City have not been clearly defined and are not supported by statute or other legal precedents, and generally do not satisfy the requirements of W.R. Grace and Southwest Ohio Regional Transit Auth.
Therefore, the City's public policy concerns, while understandable, cannot be a basis for this court to vacate the arbitration award.
 {¶ 31} Based on the language of the CBA, which confers broad discretionary powers to the arbitrator to review and modify disciplinary determinations, and given the confines of R.C. 2711.10(D), the record does not reflect that the arbitrator exceeded his powers or issued an award which contravenes a clear public policy. We, therefore, overrule all three of the City's assignments of error.
 {¶ 32} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the decision of the trial court.
Judgment affirmed.
Bryant, P.J. concurs.
Shaw, J., dissents.
[1] Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.
(1990), 49 Ohio St.3d 129, paragraph one of the syllabus, superseded by statute on other grounds (1991), 61 Ohio St.3d 658.
[2] Miller v. Gunckle 96 Ohio St.3d 359, 2002-Ohio-4932, ¶10.
[3] Id.
[4] Campbell v. Automatic Die Products Co. (1954),162 Ohio St. 321, 329.
[5] Board of Edn. of the Findlay City School Dist. v. Findlay Edn.Assn. (1990), 49 Ohio St.3d 129, paragraph two of the syllabus, superseded by statute on other grounds (1991), 61 Ohio St.3d 658.
[6] Internatl. Assn. of Firefighters, Local 67 v. Columbus,95 Ohio St.3d 101, 102, 2002-Ohio-1936.
[7] Ohio Office of Collective Bargaining v. Ohio Civ. Serv. EmployeesAssn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, syllabus.
[8] Southwest Ohio Regional Transit Auth. v. Amalgamated TransitUnion, Local 627 (2001), 91 Ohio St.3d 108, 112, 2001-Ohio-294, citingW.R. Grace Co. v. Local 759 Internatl. Union of the United Rubber,Cork, Linoleum Plastic Workers of Am. (1983), 461 U.S. 757.
[9] W.R. Grace, supra, at 766, quoting Muschany v. United States
(1945), 324 U.S. 49, 66; accord Southwest Ohio Regional Transit Auth.,91 Ohio St.3d at 112.
[10] See Collins v. Rizkana (1995), 73 Ohio St.3d 65, 70-71.
[11] Section 12.2(A) of the CBA provides: "No employee shall be disciplined, except for just cause."
[12] Section 12.2(C) of the CBA.
[13] Miami Twp. Bd. of Trustees v. Fraternal Order of Police, OhioLabor Council, Inc. (1998), 81 Ohio St.3d 269, 273.
[14] International Assn. of Firefighters, Local 67,95 Ohio St.3d at 103, 2002-Ohio-1936.
[15] (2001), 141 Ohio App.3d 724.
[16] Id. at 731.
[17] Id., quoting Green v. W. Reserve Psych. Hab. Ctr. (1981),3 Ohio App.3d 218, 219.
[18] (1990), 52 Ohio St.3d 174, 177-178. See, also, Miami Twp.Bd. of Trustees (1998), 81 Ohio St.3d at 272.
[19] CBA Section 8.6, Step 4(C).
[20] (1990), 52 Ohio St.3d 40.
[21] Id. at 43.
[22] See Southwest Ohio Regional Transit Auth., 91 Ohio St.3d at 112
("* * * we find that this statute does not indicate that public policy precludes reinstatement of a `safety sensitive' employee * * *."); andW.R. Grace, 461 U.S. 757.