FRATERNAL ORDER OF POLICE, QUEEN CITY LODGE No. 69, Appellee,

v.

CITY OF CINCINNATI, Appellant.

[Cite as *Fraternal Order of Police, Queen City Lodge v.
Cincinnati*, 164 Ohio App.3d 579, 2005-Ohio-6514.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050204.

Decided Dec. 9, 2005.

Hardin, Lefton, Lazarus & Marks, Stephen S. Lazarus, and Kimberly A. Rutowski, for appellee.

J. Rita McNeil, City Solicitor, and Gloria J. Sigman, Assistant City Solicitor, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, the city of Cincinnati, appeals from the order of the Hamilton County Court of Common Pleas granting the motion of the plaintiff-appellee, Fraternal Order of Police, Queen City Lodge No. 69 ("FOP"), to confirm an arbitrator's award modifying the discharge of the grievant, Police Lieutenant Christopher Matzen, to a ten-day suspension, and overruling the city's motion to vacate. In its single assignment of error, the city contends that the trial court erred by confirming the arbitrator's award because the arbitrator exceeded his authority when he relied on the city police division's rules and regulations, which were extraneous to the parties' collective-bargaining agreement. Because the arbitrator's award was not unlawful, arbitrary, or capricious, we affirm the trial court's judgment.

{¶ 2} The facts are summarized in the arbitrator's written decision. At 11:00 p.m. on June 17, 2003, Lt. Matzen and his partner responded to a 9–1–1 domestic-violence hang-up call that originated from the residence at 49 Kings Run in Winton Terrace. Lt. Matzen's partner went to the front door, and Matzen went to the rear door. Believing that his partner had gained entry, Matzen heard a male voice shout as the rear door opened. A man, later identified as Mario Hill, "burst out" through the rear screen door. Lt. Matzen sprayed a chemical irritant in his face. Hill retreated inside. Lt. Matzen followed and handcuffed him. The complainant advised the officers that she did not want to press charges, but only wanted Hill to leave. No criminal conduct was found to have occurred, and Lt. Matzen released Hill from the handcuffs.

{¶ 3} Lt. Matzen did not inform his partner that he had used a chemical irritant and did not immediately notify a supervisor of his use of force, as he was required to do by Procedure 12.545 of the police division's Manual of Rules and Regulations and Disciplinary Process ("the Rules Manual"). At that time, Lt.

Stuart Koeppe was acting commander in Matzen's district because the incumbent commander, Captain Thomas Johns, was on vacation and did not return to duty until June 23, 2005. Three days after the incident, on June 20, 2005, Lt. Matzen prepared a draft Form 18C1 to report the use of a chemical irritant, and he typed in the name of Lt. Koeppe as the investigating supervisor. He handed the form to Lt. Koeppe, who refused to sign it. The form stated that Lt. Koeppe had conducted the investigation, which was "not true." Koeppe advised Lt. Matzen that he was not on duty when the form said the investigation was conducted. He also advised Lt. Matzen that he was required to prepare a supplemental Form 17 because of his tardiness in reporting the use of force.

{¶ 4} The Internal Investigation Section ("IIS") investigated and concluded that Lt. Matzen's actions constituted a failure of good behavior for the following violations of the Rules Manual:

{¶ 5} (1) Rule 1.23A. "Members who use force or have knowledge of a use of force by a Department member shall immediately notify a supervisor."

{¶ 6} (2) Rule 1.23B. "Members shall not use any force in any situation than is reasonably necessary under the circumstances. Members shall use force in accordance with the law and Department procedure."

{¶ 7} (3) Rule 1.01. "Members shall not commit any acts, which constitute a violation of any of the rules, regulations, procedures, directives, or orders of the Department * * * C. An intentional violation which may lead to risk of physical injury to another or financial loss to the City * * *."

{¶ 8} IIS also charged Lt. Matzen with dishonesty in violation of Rule 5.01 of the Rules Manual, which states that a police officer in the performance of his official duty shall not "knowingly state, enter or cause to be entered on any official documents any false information." IIS determined that Lt. Matzen "was dishonest by placing Lieutenant Stuart Koeppe's name as an 'Investigating Supervisor' on a Form 18C1."

{¶ 9} Captain Michael Cureton conducted Lt. Matzen's predisciplinary hearing. He sustained all charges and specifications and recommended that, pursuant to Section 13.01 of the Rules Manual, Lt. Matzen be discharged. Police Chief Thomas H. Streicher Jr. approved Lt. Matzen's discharge, effective October 1, 2003, and the city dismissed him for a failure of good behavior and dishonesty in accordance with the charges and specifications.

{¶ 10} Following a hearing, an arbitrator determined that Lt. Matzen was guilty of a failure of good behavior in violation of Rules 1.23A, 1.23B, and 1.01C, but that the evidence did not sustain the charge of dishonesty in violation of Rule 5.01. The arbitrator then reduced Lt. Matzen's discharge to a ten-day suspension. Noting that the city had not filed a transcript of the arbitration hearing,

the trial court in its written decision concluded that the city had not established just cause to discharge Lt. Matzen at the hearing before the arbitrator, overruled the city's motion to vacate the arbitrator's award, and granted the FOP's motion to confirm the arbitrator's award.

{¶ 11} In its sole assignment of error, the city now argues that the arbitrator erred in issuing his award modifying Lt. Matzen's discharge, because (1) Article II of the collective-bargaining agreement reserved to the city, under its management rights, the power to discipline and discharge employees and (2) the arbitrator exceeded his authority by applying rules extraneous to the parties' agreement.

{¶ 12} We have previously rejected the managerial-rights argument. "We reject the city's contention that under its retention of managerial rights in Article II, and consistent with R.C. 4117.08(C), the arbitrator was limited to making only a 'just cause' determination. Absent language in a collective-bargaining agreement that restricts the arbitrator's power to review, if the arbitrator determines there was just cause to discipline an employee, the arbitrator is not required to defer to the employer as to the type of discipline imposed. * * * 'An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement.'" *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, at ¶ 21 ("the *Caton* decision"), quoting *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 407, 588 N.E.2d 802.

{¶ 13} Here, the parties' collective-bargaining agreement did not define "just cause" and included no language that restricted the arbitrator's power to review whether just cause existed and the type of discipline imposed. The award drew its essence from the agreement because the arbitrator did not issue an award contravened by any section of the collective-bargaining agreement. See *Caton*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, at ¶ 22.

{¶ 14} Next, the city argues that the arbitrator exceeded his authority to determine just cause for discipline when he applied rules extraneous to the parties' collective-bargaining agreement. See, e.g., *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 1st Dist. No. C–040454, 2005-Ohio-1560, 2005 WL 736667, at ¶ 30. The city contends that the arbitrator "used his own brand of industrial justice in finding Matzen had not been dishonest." In relying on *Internatl. Assn. of Firefighters, Local 67 v. Columbus* (2002), 95 Ohio St.3d 101, 104, 766 N.E.2d 139, however, the city mistakenly assumes that the arbitrator's award turned on the interpretation of terms defined in the collective-bargaining agreement. See *Caton*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842

N.E.2d 588, at ¶ 26–28. Here, as in *Caton*, a disciplinary-grievance case, the arbitrator's modification of a police officer's discipline was rationally derived from the terms of the agreement and the city's own disciplinary rules manual.

{¶ 15} Moreover, the city contradicts its own no-extraneous-source argument when it urges that we should look beyond Rule 5.01 of the Rules Manual to the Ohio Supreme Court's definition of "dishonesty" in *State ex rel. Neal v. State Civ. Serv. Comm.* (1947), 147 Ohio St. 430, 34 O.O. 356, 72 N.E.2d 69.

{¶ 16} Under the terms of the collective-bargaining agreement, whether the evidence sustained the charges for violation of a police division rule was what the city agreed an arbitrator could decide by binding arbitration. Whether the city disagrees with the arbitrator's assessment of the evidence is immaterial to a reviewing court. See *Caton*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, at ¶ 15; see, also, *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph one of the syllabus.

{¶ 17} In reality, the city disagrees with the arbitrator's factual finding that Lt. Matzen was not "dishonest" as defined in Rule 5.01. The arbitrator determined that when Lt. Matzen wrote the name of Lt. Koeppe as the investigating supervisor on the Form 18C1, he "did not 'knowingly,' (i.e.[,] with intent to deceive) enter on the draft Form 18C1 inaccurate, false, incomplete, misleading or improper information." The arbitrator concluded that "dishonest" as defined in Rule 5.01 was predicated on the word "knowingly," meaning "an intentional act of lying, cheating or deceiving * * *[,] an act requiring *mens rea* or a guilty mind." In his testimony at the arbitration hearing, Chief Streicher agreed that "dishonest[y]" requires "an intent to deceive" and is "an intentional act of falsehood." Since the city did not file a transcript, the weight of the evidence to sustain a determination of just cause to discharge Lt. Matzen for a violation of Rule 5.01 necessarily depended on the arbitrator's statement of the evidence and his findings, which are set forth as follows.

{¶ 18} "When he was presented the Form 18C1 by Lt. Matzen, Lt. Koeppe testified that his first reaction was to be 'shocked and angry' and he told Matzen that he could not sign the form as it was not true that he was the Investigating Supervisor. Lt. Koeppe testified that Lt. Matzen replied that he 'understood', and that Matzen then told Koeppe that he prepared the Form 18C1 as a 'draft' to aid Koeppe in his investigation. While initially Lt. Koeppe did not think the Form 18C1 given to him was a draft, after this explanation by Lt. Matzen, Koeppe accepted that the Form 18C1 was a draft.

{¶ 19} "Specifically, Lt. Koeppe testified that dishonesty is a serious charge and involves the intent to deceive. If an officer was dishonest, Lt. Koeppe would document it. In Lt. Matzen's case, Lt. Koeppe did not document that Lt. Matzen had been dishonest as he did not conclude that Matzen had been dishonest. Once

Matzen explained to Koeppe that the Form 18C1 was a draft to assist Koeppe in his investigation, Koeppe got over being initially upset and felt 'more comfortable.' He testified that he had no reason to believe that Matzen had been dishonest. Further, Lt. Koeppe testified that Lt. Matzen has a 'very good reputation' within the Police Department as an 'active lieutenant' and for being honest. All told, Lt. Koeppe believed that while the Form 18C1 Lt. Matzen presented to him was 'inaccurate', he concluded after his discussion with Matzen that he could take Matzen at his word and that Matzen had not been dishonest.

{¶ 20} "That was the testimony of the City's key witness. While a charge of dishonesty was eventually brought against Lt. Matzen as the matter went up the chain of command, the fundamental underpinning for the charge is missing. The testimony of the City's critical witness who had the crucial exchange with Lt. Matzen does not support a dishonesty charge."

{¶ 21} A court may not set aside an arbitrator's award except in the very limited circumstances set forth in R.C. 2711.10. See *Princeton City School Dist. Bd. of Edn. v. Princeton Assn. of Classroom Educators* (1999), 134 Ohio App.3d 330, 332–333, 731 N.E.2d 186. This court's review is even more constrained when the trial court has not been provided with a transcript of the arbitration hearing. See *Parrish v. Hill* (Apr. 14, 1982), 1st Dist. No. C–810585, 1982 WL 8466. Under R.C. 2711.10(D), a court may vacate an award only if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 22} We agree with the trial court that there was a reasonable nexus between the collective-bargaining agreement and the arbitrator's award, which, we hold, drew its essence from the collective-bargaining agreement. See *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802; see, also, *Findlay City School Dist. Bd. of Edn.*, 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus.

{¶ 23} The assignment of error is without merit. Therefore, we affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, P.J., and HENDON, J., concur.