[Cite as *Toledo Area Regional Transit Auth. v. Kynard*, 2016-Ohio-850.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Toledo Area Regional Transit Authority | Court of Appeals No. L-15-1140 |
| Appellee | Trial Court No. CI0201501336 |
| v. | |
| Yvette Kynard, et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: March 4, 2016 |

* * * * *

Ronald G. Linville and Samuel E. Endicott, for appellee.

Brian J. Smith, for appellants.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an April 27, 2015 judgment of the Lucas County
Court of Common Pleas, which granted appellee's motion to partially vacate an
arbitration award. The disputed arbitration ruling was issued following a mandatory
arbitration proceeding conducted pursuant to the governing collective bargaining

agreement ("CBA") executed between the Toledo Area Regional Transit Authority ("TARTA") and the Amalgamated Transit Union, ALF-CIO, Local 697 ("union"). The trial court subsequently determined that the disputed portion of the arbitrator's ruling was in violation of R.C. 2711.10(D). For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellants set forth the following two assignments of error:

The Lucas County Court of Common Pleas erred in its Opinion and Order dated April 27, 2015, granting the Motion to Partially Vacate Arbitration Award filed by the Plaintiff/Appellee Toledo Area Regional Transit Authority.

The Lucas County Court of Common Pleas erred in its Opinion and Order dated April 27, 2015, concluding that an arbitrator exceeds his authority when reviewing discipline imposed for violation of a policy adopted by an employer if the policy provides a non-arbitrary definitive sanction.

{¶ 3} The following undisputed facts are relevant to this appeal. TARTA is metropolitan Toledo's taxpayer funded mass transit system, responsible for transporting thousands of residents daily around the region. The union represents TARTA's bus operators, including appellant Kynard. The applicable collective bargaining agreement governing this matter was effective from August 8, 2011 until August 7, 2014. The CBA required that any disputes between the two parties concerning employee discipline be

2.

submitted to arbitration. Significantly, the CBA expressly provided that "the Arbitrator shall be limited in his/her discretion to the application and interpretation of the provisions of the [the CBA] and *the Arbitrator shall have no authority to alter, amend, modify, add to, subtract from or change the terms of [the CBA]*." (Emphasis added.)

{¶ 4} Appellant Kynard has been employed by TARTA for many years as a bus operator. The record reflects that during her term of employment, she has been disciplined multiple times for violating certain policies set forth in the CBA, including TARTA's cell phone policy. The cell phone policy prohibits TARTA bus operators, such as appellant Kynard, from utilizing their personal cell phones while they are on or operating a TARTA bus.

{¶ 5} The sole time TARTA bus operators are permitted to use their personal cell phones is during an official designated layover. At that time, bus operators must exit the bus if they wish to use their personal cell phone. According to the mutually agreed upon terms of the policy, as set forth in the CBA, a first violation of the policy results in a two-day suspension for the violator. Subsequently, a second violation occurring within the same 542-day period, results in termination. At the conclusion of the contractually defined time period, previous violations within that period no longer count relative to future violations committed by an operator in the subsequent time period. In addition, pursuant to the explicit terms of the policy established in the CBA, TARTA has the right to terminate employment on a first offense if warranted by the seriousness of a violation. Appellant has been found to have been in violation of the policy on three occasions.

3.

{¶ 6} On the day of the underlying incident, appellant Kynard was assigned to work TARTA's Call-A-Ride Service. This service enables TARTA customers to call TARTA for a ride beyond the limits of the normally defined bus routes. Riders utilizing the service are picked up and transported to a stated destination. Accordingly, the Call-A-Ride drivers are furnished TARTA cell phones to receive calls from TARTA customers. In addition, the TARTA drivers performing this service are granted extra time to pick up the customers utilizing the Call-A-Ride service so as to allot the drivers adequate time to perform all of their job duties.

{¶ 7} On November 11, 2013, appellant Kynard was operating a Call-A-Ride bus in Maumee, Ohio. Appellant Kynard received a phone call on her TARTA mobile phone from a TARTA customer who requested to be picked up at a location just one and one-half miles from her location. Appellant Kynard advised the customer that she would not be picking him up. Appellant Kynard did so even though the customer was in close proximity to her and despite having ample time available before her next obligation. Nevertheless, she told the customer that he would have to wait for over one hour for the next available driver.

{¶ 8} The record reflects that after refusing to perform her assigned job duty, appellant Kynard drove her TARTA bus to a nearby shopping center, parked the bus, and then utilized her personal cell phone for nearly 20 minutes without exiting the bus. The record shows that appellant Kynard made multiple personal calls and texts during the time that the customer could have been picked up and transported.

4.

**{¶ 9}** Following this incident, the customer called TARTA and reported the event. Accordingly, an investigation was launched by TARTA's Superintendent of Transportation to ascertain what had occurred, particularly in connection to appellant Kynard's CBA obligations.

**{¶ 10}** The investigation revealed that appellant Kynard, who has a history of cell phone violations, had again violated TARTA's cell phone policy. Appellant Kynard refused to perform her job duties and instead parked her TARTA bus and commenced personal cell phone use in violation of the CBA.

**{¶ 11}** A disciplinary hearing was held. Appellant Kynard was found to have violated the policy. A two-day suspension for violating the policy was imposed, as mandated by the CBA. In response, the union filed a grievance on her behalf, challenging the suspension. Pursuant to the CBA, the dispute was then submitted to arbitration.

**{¶ 12}** On November 10, 2014, the arbitrator found that although appellant Kynard had violated the cell phone policy, "[I]n a literal sense," she should receive an award of a discipline modification to a written warning, along with a one-day suspension. This outcome runs contrary to the fixed sanction of a two-day suspension set forth in the mutually agreed upon terms of the CBA. The award further opined that appellant Kynard should have been subjected to a progressive discipline policy, but the CBA cell phone policy provisions do not establish a progressive discipline policy such as that suggested by the arbitrator. As such, TARTA filed a motion to vacate this portion of the award.

5.

The trial court found that the arbitrator had violated R.C. 2711.10(D). TARTA's motion was granted. This appeal ensued.

{¶ 13} We note that both assignments of error are rooted in the same underlying premise that the trial court's modification of the arbitrator's discipline was improper. In the first assignment of error, appellants contend that the trial court erred when it granted TARTA's motion to partially vacate the arbitration award. Similarly, in the second assignment of error, appellants argue that the trial court erred when it ruled that the arbitrator had exceeded his authority. We do not concur.

{¶ 14} Under Ohio law, the appellate court reviews the trial court's decision to vacate an arbitration award on a de novo basis. *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 15 (2d Dist.). The appellate court reviews the judgment "independently and without deference to the trial court's determination." *Brown v. Scioto Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 15} R.C. 2711.10(D) sets forth the relevant considerations the trial court must take into account when vacating an arbitration award:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if: (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

6.

{¶ 16} In determining the proper boundaries of an arbitration award, "The arbitrator is confined to the interpretation and application of the collective bargaining agreement * * * he is without authority to disregard or modify plain and unambiguous provisions." *AFSCME, Ohio Council 8, Local 3536 v. Clermont County Dept. of Human Servs.*, 112 Ohio App.3d 401, 404, 678 N.E.2d 998 (12th Dist.1996). In addition, the arbitrator must, "[C]onstrue the terms used in the agreement according to their plain and ordinary meaning." *Int'l Ass'n of Firefighters, Local 67 v. Columbus*, 95 Ohio St.3d 101, 103, 766 N.E.2d 139 (2002).

{¶ 17} The record reflects that the arbitrator improperly went outside the bounds of the terms and conditions of the mutually agreed upon CBA. The trial court correctly found this to be improper. Wherefore, based upon the forgoing, we find appellants' first and second assignments of error to be not well-taken.

{¶ 18} Accordingly, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.        _____
                   JUDGE

Stephen A. Yarbrough, J.

James D. Jensen, P.J.       _____
CONCUR.               JUDGE

                _____
                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.