DECISION AND JUDGMENT ENTRY
{¶ 1} The City of Portsmouth appeals a judgment confirming an arbitration award in favor of Steven Nagel, after the arbitrator ordered Nagel's reinstatement as a police officer for the city. The Union and Nagel cross-appeal the court's denial of their request for damages and attorney fees.
 {¶ 2} Portsmouth contends the arbitrator exceeded his authority and implemented his own brand of industrial justice in reinstating Nagel because the issue of procedural improprieties was not properly before the arbitrator.
 {¶ 3} After the arbitrator found the city violated Nagel's right to have counsel present at an investigatory interview, the arbitrator concluded the appropriate remedy was to set aside the city's decision to terminate Nagel. However, the collective bargaining agreement ("CBA") specifically required Nagel to file a separate grievance to contest any violation of investigative procedures specified by that agreement. Because Nagel did not follow the CBA's grievance procedure, he waived any objection he had to the denial of its protections. And in deciding the procedural issue in spite of Nagel's failure to follow the steps expressly provided by the CBA, the arbitrator exceeded his authority by effectively rewriting the agreement.
 {¶ 4} Because we conclude the arbitrator exceeded his authority by ordering Portsmouth to reinstate Nagel as a police officer, we reverse the trial court's judgment confirming the arbitration award. The cross-appeal is thereby rendered moot.
 I. Termination of Nagel's Employment {¶ 5} Portsmouth hired Nagel as a police officer in May 2002. In October 2003, Portsmouth notified Nagel by letter that it was conducting an investigation into charges of his misconduct as a police officer. The misconduct charges were based upon 11 incidents that allegedly occurred between May 2003 and October 2003.
 {¶ 6} On November 12, 2003, Portsmouth conducted an investigative interview of Nagel concerning the charges against him. Portsmouth's questioning of Nagel proceeded despite Nagel's repeated oral requests that the questioning be postponed until his retained counsel could be present. Based upon the interview, Portsmouth's police chief concluded that Nagel had engaged in misconduct including falsification of documents and insubordination. Following the recommendation of the police chief to discharge Nagel, Portsmouth's mayor terminated Nagel's employment in January 2004. Under a CBA between the Union and Portsmouth, Nagel filed a grievance challenging his termination.
 II. The Collective Bargaining Agreement {¶ 7} Under Article 2 of the CBA, Portsmouth retains certain management rights, including the right to "suspend, discipline, demote or discharge for just cause" its employees, such as Nagel, who are members of the bargaining unit covered under the CBA.
 {¶ 8} Article 11, entitled "Corrective Action", provides that bargaining unit members will not be "reduced in pay or position, suspended, removed or reprimanded except for just cause" and that "[t]he principles of progressive corrective action will be followed with respect to minor offenses." Neither "just cause" nor "minor offenses" is defined in the CBA.
 {¶ 9} Article 10, entitled "Investigative Procedure", sets forth various steps the city must follow when investigating complaints against bargaining unit members. The Article specifically provides that a bargaining unit member may be represented by a Union representative or the member's own attorney during an investigatory interview that may lead to disciplinary or criminal sanctions. Article 10(K) further expressly provides that "[i]f any of these procedures are violated, such violations shall be subject to the Grievance Procedure beginning at Step 3."
 {¶ 10} The "Grievance Procedure", set forth in Article 9 of the CBA, permits a bargaining unit member who is disciplined to challenge the discipline through a four-step grievance process. In Step 1, a member's grievance is presented to a Division Captain; if the grievance is not resolved, Step 2 allows for submission of the grievance to the Police Chief. Step 3 of the grievance procedure permits an unresolved grievance to be submitted to the Mayor or his designee for decision. If the grievance still remains unresolved, it may be submitted to final and binding arbitration as provided in Step 4's arbitration provisions.
 III. Arbitration Proceedings {¶ 11} Nagel's grievance of termination ultimately proceeded to an arbitrator for decision. There is no transcript of the arbitration proceedings in the record provided to us. However, the arbitrator's decision indicates that Nagel and the Union asserted that (1) there was insufficient evidence of insubordination and dishonesty to establish "just cause" as required by the CBA for Nagel's dismissal, (2) Portsmouth failed to use progressive discipline as required by the CBA, and (3) Portsmouth denied Nagel due process as required by the CBA and Ohio law. The arbitrator's decision further indicates Portsmouth argued that (1) Nagel was guilty of falsification and insubordination, in violation of the Law Enforcement Code of Ethics and Rules of Conduct, (2) falsification and insubordination committed by a police officer are serious matters that destroy a police officer's credibility and warrant a penalty of removal, and (3) the CBA does not require Portsmouth to use progressive discipline when an officer's misconduct is serious.
 {¶ 12} The arbitrator reviewed the CBA and concluded that Portsmouth should have adhered to the CBA's progressive discipline provisions, including Article 11, which requires Portsmouth to issue "an oral reprimand, a written reprimand, and a suspension for the same or related offenses prior to [a bargaining unit member's] dismissal unless the specific incident warrants more severe discipline." The arbitrator noted that Portsmouth had given Nagel one oral and one written reprimand in total for all his alleged instances of misconduct, and it did not suspend Nagel before discharging him.
 {¶ 13} The arbitrator determined that Portsmouth's investigatory interview of Nagel was a material part of the disciplinary process and that evidence obtained during the interview led directly to the police chief's recommendation to terminate Nagel. According to the arbitrator, the evidence did not establish that Nagel had engaged in serious misconduct constituting major offenses for which discharge would be warranted; rather, the evidence reflected that Nagel had committed only minor offenses for which a disciplinary suspension would be appropriate. The arbitrator then found that even if the evidence supported a disciplinary suspension of Nagel, it was tainted by the fact that Nagel was questioned in the absence of a representative during the investigatory interview in violation of his right to procedural due process afforded by Article 10 of the CBA. The arbitrator stated, "it would be inappropriate for the Arbitrator to reduce the discipline to a disciplinary layoff[, and t]he Arbitrator has no choice but to set aside the dischargeand reinstate the Grievant." (Emphasis added). Concluding that Nagel's discharge was accordingly without just cause, the arbitrator sustained Nagel's grievance and ordered his reinstatement as a police officer.
 IV. The Trial Court's Ruling {¶ 14} Under R.C. 2711.10, Portsmouth filed a motion in the common pleas court to vacate the arbitration award. Portsmouth argued that the arbitrator exceeded his authority, the arbitration award was without rational support, the arbitrator implemented his own brand of industrial justice, and the award was contrary to public policy favoring honest law enforcement officers.
 {¶ 15} The trial court agreed that the arbitrator exceeded his authority in deciding that Portsmouth violated Nagel's procedural due process rights because the issue was not submitted to the arbitrator for decision. The court nevertheless confirmed the arbitration award, determining that vacation of the arbitration award was not warranted because the arbitrator's analysis of the issues that had been submitted to him was more than adequate, the arbitration award was not without rational support, the award drew its essence from the collective bargaining agreement, and the award was not contrary to public policy. The court granted Nagel and the Union a writ of mandamus and an injunction to enforce the arbitration award, but it denied their requests for damages and attorney fees.
 V. Assignments of Error {¶ 16} Portsmouth appeals from the trial court's judgment, presenting the following assignments of error:
ASSIGNMENT OF ERROR #1
THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND THAT THE ARBITRATOR EXCEEDED HIS AUTHORITY.
ASSIGNMENT OF ERROR #2
THE TRIAL COURT ERRED IN FINDING THAT THE ARBITRATOR'S MERE CONSIDERATION OF THE ISSUES RESULTED IN A DECISION THAT WAS WITH RATIONAL SUPPORT.
ASSIGNMENT OF ERROR #3
THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND THAT THE ARBITRATOR IMPLEMENTED HIS OWN BRAND OF INDUSTRIAL JUSTICE IN REINSTATING GRIEVANT.
ASSIGNMENT OF ERROR #4
THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO VACATE THE ARBITRATION AWARD ON PUBLIC POLICY GROUNDS.
ASSIGNMENT OF ERROR #5
THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE UNION'S COUNTERCLAIM SEEKING A WRIT OF MANDAMUS AND INJUNCTIVE RELIEF.
 {¶ 17} The Union and Nagel present a sole assignment of error on cross-appeal:
The Court of Common Pleas erred in denying damages and attorney fees to Cross-Appellants.
 VI. Standard of Review {¶ 18} In evaluating an arbitrator's decision, a reviewing court's role is limited to determining whether the award is unlawful, arbitrary, or capricious and whether it "draws its essence from the collective bargaining agreement." Internatl.Assn. of Firefighters, Local 67 v. Columbus, 95 Ohio St.3d 101,102, 2002-Ohio-1936; Miami Twp. Bd. of Trustees v. FraternalOrder of Police, Ohio Labor Council, Inc. (1998),81 Ohio St.3d 269, 273; Queen City Lodge No. 69, Fraternal Order of Police,Hamilton Cty., Ohio, Inc. v. Cincinnati (1992),63 Ohio St.3d 403, 406.
 {¶ 19} For an arbitration award to draw its essence from the CBA, there must be a rational nexus between the agreement and the award. Internatl. Assn. of Firefighters, supra, citingMahoning Cty. Bd. of Mental Retardation DevelopmentalDisabilities v. Mahoning Cty. TMR Edn. Assn. (1986),22 Ohio St.3d 80, paragraph one of the syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot rationally be derived from the terms of the agreement."Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp.Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, syllabus.
 VII. Limits on Arbitrator's Powers {¶ 20} "An arbitrator's powers are set by the agreement from which he draws his authority. The arbitrator has no authority to decide issues which, under the agreement, the parties did not submit to review." State Farm Mut. Ins. Co. v. Blevins (1990),49 Ohio St.3d 165, paragraph one of the syllabus. Moreover, "`the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions.'" Ohio Office of Collective Bargaining,
supra at 180, quoting Detroit Coil Co. v. Internatl. Assn.of Machinists Aerospace Workers, Lodge No. 82
(C.A.6, 1979), 594 F.2d 575, 579. See, also, Internatl.Assn. of Firefighters, supra at 103-104. If an arbitrator has exceeded his powers, a reviewing court must vacate the arbitrator's award. R.C. 2711.10(D).
 VIII. Whether the Arbitrator Exceeded His Authority {¶ 21} Portsmouth contends the arbitrator exceeded his powers in violation of R.C. 2711.10(D) by ignoring the narrow questions presented to him by stipulation of the parties and rendering a decision reinstating Nagel based upon Portsmouth's arguable procedural due process violation during the investigatory interview. Portsmouth argues that once the trial court determined that an issue concerning Portsmouth's violation of procedural due process was not properly before the arbitrator for decision, the trial court erred in failing to vacate the arbitration award under R.C. 2711.10(D).
 {¶ 22} By stipulation, the parties submitted the following issues to the arbitrator: "Was the Discharge of the Grievant, Steven Nagel, for Just Cause? If Not, What Shall the Remedy Be?"
 {¶ 23} The term "just cause" is not defined in the CBA. Portsmouth submits that the term should be construed narrowly and is limited to the substantive reasons for discharge or disciplinary action of an employee. However, "just cause" may encompass both the procedural and substantive aspects of an employment action. See, e.g., John Wiley Sons, Inc. v.Livingston (1964), 376 U.S. 543, 556, 84 S.Ct. 909,11 L.Ed.2d 898 (determining labor disputes cannot be readily broken down into "substantive" and "procedural" aspects). Thus, in an appropriate situation an arbitrator may consider the procedural aspects of an employment action in deciding if just cause exists.
 {¶ 24} However, the arbitrator was limited "strictly" to interpreting, applying and enforcing the CBA, and he was precluded from modifying or amending the CBA. (Article 9, Step 4, ¶ d). Article 10(K) expressly provides that "If any of these (investigative) procedures are violated, such violations shallbe subject to the Grievance Procedure beginning at Step 3" (submission of a grievance to the Mayor or his designee). (Emphasis added). Article 10 does not authorize the arbitrator to reinstate a grievant when the arbitrator finds a violation of Article 10's procedures.
 {¶ 25} Under the express terms of the CBA, immediately after the investigative hearing Nagel should have filed a grievance if he believed the city violated his right to counsel. His failure to do so amounted to a waiver. Thus, the arbitrator effectively rewrote the agreement when he allowed Nagel to by-pass the procedure the parties agreed to in adopting Article 10(K) of the CBA. The arbitrator thus exceeded the authority granted to him under the CBA when he ordered Nagel's reinstatement upon finding a violation of Article 10's procedural safeguards. Accordingly, the arbitration award must be vacated. R.C. 2711.10(D).
 {¶ 26} For the foregoing reasons, we sustain Portsmouth's first assignment of error and reverse the trial court's judgment. We do not reach the remaining assignments of error nor the cross appeal, which are rendered moot by our decision.
JUDGMENT REVERSED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and that Appellant/Cross-Appellee recover of Appellee/Cross-Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.