[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 108.]

SOUTHWEST OHIO REGIONAL TRANSIT AUTHORITY, APPELLEE, *v.*

AMALGAMATED TRANSIT UNION, LOCAL 627, APPELLANT.

[Cite as *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 2001-Ohio-294.]

*Arbitration—Labor relations—Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance.*

(No. 00-21–Submitted November 14, 2000—Decided March 7, 2001.)

APPEAL from the Court of Appeals for Hamilton County, No. C-980974.

————————————

**SYLLABUS OF THE COURT**

Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance, assuming that the award is otherwise reasonable in its terms for reinstatement.

————————————

**LUNDBERG STRATTON, J.**

{¶ 1} Appellee, Southwest Ohio Regional Transit Authority ("SORTA"), operates a mass transit system in the greater Cincinnati area. Appellant, Amalgamated Transit Union, Local 627 ("Union"), is a labor union that represents certain SORTA employees, including bus maintenance workers. SORTA and the Union negotiated a collective bargaining agreement ("CBA"). Under the CBA, SORTA or the Union may submit to arbitration any otherwise unresolved grievance that arises from the interpretation or application of its terms. The CBA also

provided that "[t]here shall be no discharge, suspension or other disciplinary action without sufficient cause."

{¶ 2} In 1995, SORTA adopted a drug-and-alcohol-prevention policy ("drug policy"), which subjects "safety sensitive" employees to random drug testing. The test employed by SORTA incorporates federal standards under which an employee is tested to determine if certain metabolites, which are a byproduct of marijuana use, are present in the employee's urine. SORTA describes its drug policy as a "zero tolerance" policy; in other words, if an employee tests positive, the employee is terminated.

{¶ 3} Marc Sundstrom was a Union member who was employed by SORTA as a bus repairperson, which was classified as a "safety sensitive" position. Sundstrom's position required him to have a commercial driver's license in order to test drive the buses that he repaired. On February 10, 1997, Sundstrom was subjected to a random drug test pursuant to SORTA's drug policy. Sundstrom tested positive for metabolites in his blood and was summarily discharged pursuant to SORTA's zero tolerance policy.

{¶ 4} The Union filed a grievance on Sundstrom's behalf, which was referred to arbitration pursuant to the CBA. The arbitration panel sustained the grievance in part and denied it in part. The panel found that the decision to discharge Sundstrom was based solely upon his violation of the drug policy. The panel found that SORTA's drug policy was facially valid and that testing positive was a dischargeable offense. However, the panel determined that the drug policy's automatic discharge sanction for testing positive conflicted with, and therefore violated, the "sufficient cause" discharge standard set out in the CBA. After considering the length of Sundstrom's service and his lack of any prior disciplinary problems, the panel found that Sundstrom had been discharged without sufficient cause. Accordingly, the panel decided that Sundstrom should be reinstated. However, the panel denied Sundstrom back pay, required him to complete a drug-

and-alcohol rehabilitation program, and subjected him to unannounced drug testing. The award stated that failure to comply with any of these requirements or a positive drug test would result in Sundstrom's immediate dismissal.

{¶ 5} SORTA appealed the arbitration award to the Court of Common Pleas of Hamilton County. The court confirmed the award, holding that it drew its essence from the CBA and was not unlawful, arbitrary, or capricious.

{¶ 6} SORTA appealed to the Hamilton County Court of Appeals. The court of appeals reversed the arbitration award, holding that "reinstating Sundstrom, a safety-sensitive employee who tested positive for marijuana while on the job, would violate the explicit, well-defined and dominant public policy to ensure the safety of the passengers of common carriers and the general public by suppressing illegal drug use among transportation employees."

{¶ 7} This cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 8} The case presents two issues before this court. The first is whether the award should be vacated because it fails to draw its essence from the CBA. The second is whether the award is against public policy and should be vacated as being unlawful.

*The Award Draws its Essence from the CBA*

*and is not Arbitrary or Capricious*

{¶ 9} Public policy favors arbitration. *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of the syllabus. "The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83-84, 22 OBR 95, 98, 488 N.E.2d 872, 875. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed

to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective- bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract." *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.* (1987), 484 U.S. 29, 37-38, 108 S.Ct. 364, 370-371, 98 L.Ed.2d 286, 299. Accordingly, courts are limited to determining whether an arbitration award is unlawful, arbitrary, or capricious and whether the award draws its essence from the CBA. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus, superseded by statute on other grounds, see *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO* (1991), 61 Ohio St.3d 658, 661-662, 576 N.E.2d 745, 750. An award draws its essence from the CBA when there is a rational nexus between the CBA and the award. *Mahoning Cty. Bd. of Mental Retardation,* 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

{¶ 10} SORTA states that it adopted its drug policy pursuant to Section 26(a) of the CBA. SORTA argues that the award, that reinstated Sundstrom, did not draw its essence from the CBA because it ignored the automatic discharge sanction required by SORTA's drug policy. We disagree.

{¶ 11} We find that any sanction for a violation of a rule adopted by SORTA pursuant to Section 26(a) of the CBA was subject to the "sufficient cause" standard for dismissing employees found in Section 3(b) of the CBA. See *Local No. 7, United Food & Commercial Workers Internatl. Union v. King Soopers, Inc.* (C.A.10, 2000), 222 F.3d 1223. In *King Soopers,* the union and King Soopers negotiated a CBA that provided that no union employee would be terminated without "good and sufficient cause." *Id.* at 1225. However, King Soopers also unilaterally adopted a "no call/no show" policy that provided that three unexcused

4

absences would result in immediate discharge. Lally Parbhu, a union member and employee at King Soopers, failed to provide an excuse for a two-week absence. King Soopers dismissed her pursuant to the no-call/no-show policy.

{¶ 12} The union filed a grievance protesting Parbhu's dismissal. The arbitrator issued an award that reinstated Parbhu, finding that while it was possible that a violation of the no-call/no-show policy could be grounds for immediate termination, Parbhu's discharge did not meet the test of just cause.

{¶ 13} King Soopers appealed, and the appellate court affirmed the arbitrator's award that reinstated Parbhu, reasoning that "[a]lthough the CBA negotiated between King Soopers and the Union gives King Soopers 'the right * * * to make necessary reasonable rules and regulations for the conduct of business, providing that said rules and regulations are not in conflict with the terms of [the CBA] in any way,' * * *, *the right to make such rules is not the right to equate the violation of such rules with 'good and sufficient cause' for termination. To hold otherwise would be to allow King Soopers to unilaterally define the meaning of 'good and sufficient cause,' a right which was not contemplated by the CBA and for which King Soopers must negotiate with the Union*." (Emphasis added.) *Id.* at 1227.

{¶ 14} We agree with, and apply, the reasoning of *King Soopers* to this case. While SORTA's drug policy may be facially valid, we find that SORTA did not have the right to *unilaterally* adopt automatic termination without possibility of reinstatement as a sanction for testing positive, because such a sanction conflicts with the "sufficient cause" requirement for dismissal found in Section 3(b) of the CBA. Just as the court noted in *King Soopers*, allowing SORTA to enforce automatic termination would allow an employer to unilaterally adopt a sanction that conflicts with the sufficient-cause requirement for dismissal that was negotiated into the CBA, thereby undermining the integrity of the entire collective bargaining

process. The proper avenue for SORTA to adopt such a sanction would be through the collective bargaining process, not through a unilateral decision.

{¶ 15} Section 26(a) of the CBA, under which SORTA contends that it adopted its drug policy, further supports our conclusion. It states that SORTA *"will provide that there is no conflict between orders and rules* [adopted pursuant to Section 26] *and the provisions of this contract."* (Emphasis added.) Thus, by adopting immediate dismissal as a sanction for violating the drug policy, SORTA created a conflict with Section 3(b) of the CBA, which allows employees to be terminated only for sufficient cause.

{¶ 16} Therefore, we find that the automatic dismissal sanction under SORTA's drug prevention policy violates the sufficient-cause requirement for dismissal of the CBA. Thus, because the panel's award reinstating Sundstrom was based on the sufficient-cause standard set out in the CBA, the award drew its essence from the CBA and was not arbitrary or capricious.[1]

*The Award is Lawful because it is not against Public Policy*

{¶ 17} SORTA further contends, and the appellate court held, that even if the award draws its essence from the CBA, public policy against drug use requires mandatory termination of a "safety sensitive" employee who fails a drug test. We must examine whether there is such a public policy that would render the award reinstating Sundstrom unenforceable.

{¶ 18} In *W.R. Grace & Co. v. Local 759, Internatl. Union of Rubber, Cork, Linoleum & Plastic Workers of Am.* (1983), 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 307, the United States Supreme Court held if the

---

1. SORTA argues that the arbitration award fails to draw its essence from the CBA because the panel failed to enforce the automatic discharge sanction pursuant to SORTA's drug policy. However, SORTA does not specifically argue that the award was arbitrary or capricious. That, in conjunction with our failure to find any evidence to support such a conclusion, persuades us to conclude that the award was not arbitrary or capricious.

interpretation of a CBA violates public policy, the resulting award is unenforceable. However, the *Grace* court also cautioned that the public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.,* quoting *Muschany v. United States* (1945), 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744, 755. Thus, vacating an arbitration award pursuant to public policy is a narrow exception to the "hands off" policy that courts employ in reviewing arbitration awards and "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373, 98 L.Ed.2d at 302. Accordingly, we must examine "laws and legal precedents" in order to determine if there is any public policy that would render the award reinstating Sundstrom unenforceable.

{¶ 19} SORTA argues that the General Assembly has codified a public policy against use of alcohol or controlled substances by transportation employees in R.C. 4506.15. We agree with this assertion. However, we find that this statute does not indicate that public policy precludes *reinstatement* of a "safety sensitive" employee who tests positive for alcohol or a controlled substance. Ohio punishes persons who drive commercial motor vehicles "while having a measurable or detectable amount of * * * alcohol or a controlled substance in his * * * urine" or "while under the influence of a controlled substance" by suspending the guilty party's commercial driver's license. R.C. 4506.15(A) and (C); 4506.16. However, except where a person has multiple convictions or where the person is convicted of an offense involving drug trafficking, there is no permanent termination of the guilty party's commercial license. Even certain persons who have their license revoked "for life" may have their license reinstated if they undergo a rehabilitation program. Ohio Adm.Code 4501:1-1-26. Thus, we find that this law does not dictate a public policy that precludes a person who tests positive for a controlled substance from having a second chance.

{¶ 20} In Ohio, two appellate districts have held that enforcement of an arbitration award reinstating a safety-sensitive employee who tested positive for a controlled substance or alcohol is against public policy. See *Cleveland Bd. of Edn. v. Internatl. Bhd. of Firemen & Oilers Local 701* (1997), 120 Ohio App.3d 63, 696 N.E.2d 658 (Eighth District); *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (Sept. 28, 1994), Hamilton App. No. C-930423, unreported, 1994 WL 525543. In examining Ohio law, both decisions relied upon *Dietrich v. Community Traction Co.* (1964), 1 Ohio St.2d 38, 30 O.O.2d 22, 203 N.E.2d 344, which stated that "[i]t is generally recognized that the duty of a common carrier of passengers is to exercise the highest degree of care for the safety of its passengers." *Id.* at 41, 30 O.O.2d at 23, 203 N.E.2d at 347. The courts in both *Local 701* and *Local 627* found that the duty defined in *Dietrich* precludes the reinstatement of a safety-sensitive employee who tested positive for a controlled substance or alcohol as a matter of public policy. We find that the law suggests something quite different.

{¶ 21} Consistent with a common carrier's duty to exercise the highest degree of care for its passengers, and pursuant to its authority to regulate motor transportation companies under R.C. 4921.04, the Public Utilities Commission of Ohio has adopted certain United States Department of Transportation safety standards. See Ohio Adm.Code 4901:2-5-02(A). In particular, the Public Utilities Commission has adopted Section 382, Title 49, C.F.R., which addresses testing of commercial motor vehicle operators for alcohol and controlled substances.

{¶ 22} Because Ohio law relies on and incorporates federal laws and regulations, in particular Part 382, Title 49, C.F.R., we must examine federal policy. In an almost identical case, the United States Supreme Court has recently examined whether *federal law* and implementing *regulations* that require drug testing of safety-sensitive employees, including Part 382, Title 49, C.F.R., make an arbitration award reinstating such an employee who tested positive for a controlled

8

substance unenforceable pursuant to public policy. *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17* (2000), 531 U.S. ___, 121 S.Ct. 462, 148 L.Ed.2d 354. In *Eastern*, Smith, a union employee, tested positive for drugs and was immediately terminated. An arbitrator determined that Smith's positive drug test did not amount to "just cause" for discharge pursuant to the CBA. The award was upheld on appeal.

{¶ 23} On appeal to the Supreme Court, Eastern argued that public policy against drug use, as reflected in the federal law and regulations that require drug testing, rendered the arbitration award reinstating Smith unenforceable. The court determined that "the question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does so." *Eastern,* 531 U.S. at ___, 121 S.Ct. at 467, 148 L.Ed.2d at 361.

{¶ 24} In determining if there was a public policy to render the award unenforceable, the court examined the Omnibus Transportation Employee Testing Act of 1991, Section 31306, Title 49, U.S.Code, and DOT's implementing regulations. The court found that "these expressions of positive law embody several relevant policies," including "policies against drug use by employees in safety-sensitive transportation positions and in favor of drug testing," as well as a "policy favoring rehabilitation of employees who use drugs." *Id.,* 531 U.S. at ___, 121 S.Ct. at 468, 148 L.Ed.2d at 363. Pertinent to its conclusion was the court's consideration of Part 382, Title 49, C.F.R., which defines the circumstances under which a safety-sensitive employee who tested positive for drugs may return to work. *Id.,* 531 U.S. at ___, 121 S.Ct. at 468, 148 L.Ed.2d at 362, citing Section 382.605, Title 49, C.F.R. Applying this holding, the court determined that the award did not condone Smith's conduct or ignore the risk drug use poses to the public. Instead, the award punished Smith by suspending him for three months without pay, requiring him to pay the arbitration costs for both sides, subjecting him to substance abuse treatment and testing, and making it clear that another failed

test would result in discharge. *Id.* Thus, the court held that the award reinstating Smith was not contrary to any "explicit," "well defined," "dominant" public policy. *Id.,* 531 U.S. at ___, 121 S.Ct. at 469, 148 L.Ed.2d at 364.

{¶ 25} Because Ohio has adopted Part 382, Title 49, C.F.R., and because Ohio has no other law or legal precedent mandating termination, we hold that Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance, assuming that the award is otherwise reasonable in its terms for reinstatement.

{¶ 26} The arbitration award herein punished Sundstrom by denying him back pay. It also required Sundstrom to attend a rehabilitation program, to pass a return-to-work drug test, and to take unannounced drug tests upon reinstatement. Failure to complete rehabilitation or a positive test result would result in Sundstrom's immediate discharge. Considering the length of Sundstrom's employment and his lack of disciplinary problems, we find that the terms for reinstatement were reasonable in that they imposed punishment and provided safeguards to prevent recidivism.

{¶ 27} Thus, we hold that the award reinstating Sundstrom was not against public policy, and thus was lawful.[2]

{¶ 28} This holding does not imply that drug use may never be a basis for automatic discharge. An employee's overall disciplinary record, the egregiousness of the infraction, problems with recidivism, or other issues could constitute

---

2. SORTA's own drug policy, based on federal regulations that have provisions similar to those addressed in Eastern, belies any safety concern requiring dismissal of all employees who have used drugs. SORTA's drug policy provides a second chance to those employees who voluntarily come forward and admit to drug use prior to any positive test. These employees may retain their position with SORTA contingent upon completion of the rehabilitation program and continuing negative drug test results. Thus, the differing sanctions of SORTA's own drug policy negate any policy argument that safety requires a "zero tolerance" policy.

sufficient cause for discharge.  Of course these are matters that are contingent upon the terms of the CBA, as well as the arbitrator's interpretation of those terms.

*Conclusion*

{¶ 29} We hold that the arbitration award reinstating Sundstrom drew its essence from the CBA and was not unlawful, arbitrary, or capricious.  Accordingly, we reverse the judgment of the court of appeals and order that the arbitration award be reinstated.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment.

COOK, J., dissents.

————————————

**COOK, J., dissenting.**

{¶ 30} Like the majority, I disagree with the court of appeals' holding that reinstating Sundstrom would violate an explicit, well-defined, and dominant public policy.  I would, nonetheless, affirm the court of appeals' judgment because I agree with the Southwest Ohio Regional Transit Authority ("SORTA") that the panel's award did not draw its essence from the CBA.

{¶ 31} On the one hand, the majority concedes that SORTA's drug policy may be "facially valid."  On the other hand, the majority finds that the policy "violates the sufficient-cause requirement for dismissal of the CBA."  But neither the majority nor the panel can have it both ways.  The arbitration panel in this case found it difficult to determine whether the union had ever actually challenged the facial validity of the drug policy.  The panel concluded, however, that to the extent the union *did* challenge the facial validity of the rule, "the Authority's Policy is facially valid."  This valid rule was thereby "incorporated into the collective bargaining agreement and [had] the force of contract language." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Internatl. Union* (C.A.4, 1996), 76 F.3d 606,

610. Under the express terms of Section 3(d) of the CBA, the panel had "no authority to alter, amend, modify, add to, subtract from or change the terms" of the agreement.

{¶ 32} But like the arbitrator in *Mountaineer Gas, supra,* the arbitration panel here "ignored the unambiguous language of the Drug Policy and fashioned a modified penalty that appealed to [its] own notions of right and wrong. * * * By fashioning [a] new remedy and infusing [its] personal feelings and sense of fairness into the award, the [panel] created an award that failed to draw its essence from the CBA." *Id.*, 76 F.3d at 610. As the United States Supreme Court has noted, though arbitrators may certainly interpret CBA provisions, they cannot disregard them, and "[do] not sit to dispense [their] own brand of industrial justice." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. The Sixth Circuit has agreed, and vacated an arbitrator's award of reinstatement when the CBA provided that an employee could be "discharged without [redress] if proven guilty of * * * insubordination." *Morgan Serv., Inc. v. Local 323, Chicago & Cent. States Joint Bd., Amalgamated Clothing & Textile Workers Union, AFL-CIO* (C.A.6, 1984), 724 F.2d 1217, 1219.

{¶ 33} The majority describes the United States Supreme Court's recent *Eastern Associated Coal Corp.* decision as "an almost identical case." *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17* (2000), 531 U.S. ___, 121 S.Ct. 462, 148 L.Ed.2d 354. But *Eastern* differs markedly from the case at bar. In *Eastern*, the Supreme Court expressly assumed that the CBA at issue provided for reinstatement, and also specifically noted that the employer had never claimed that the arbitrator acted outside the scope of his contractually delegated authority. *Id.* at ___, 121 S.Ct. at 466-467, 148 L.Ed.2d at 360-361. Unlike the employer in *Eastern,* however, SORTA *has* consistently claimed that the panel acted outside the scope of its contractually delegated authority. SORTA did so in

its complaint and application to vacate the arbitration award, in its brief to the court of appeals, and in its merit brief to this court. Accordingly, although I agree with *Eastern*'s holding that public policy considerations do not preclude enforcement of reinstatement awards such as the one at issue here, *Eastern* did not overturn *Enterprise Wheel, supra,* and does not compel today's result. See *Eastern,* 531 U.S. at ___, 121 S.Ct. at 466, 148 L.Ed.2d at 360 ("Of course, an arbitrator's award 'must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice,' " quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.* [1987], 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286, 299). I would, therefore, affirm the judgment of the court of appeals.

————————————

*Dinsmore & Shohl LLP*, *Charles M. Roesch* and *Robert J. Reid,* for appellee.

*Kircher, Robinson & Welch* and *James B. Robinson*; *Jubelirer, Pass & Intrieri*, *P.C.*, and *Ernest B. Orsatti,* for appellant.

*Stewart Jaffy & Associates Co., L.P.A.*, *Stewart R. Jaffy* and *Marc J. Jaffy*, urging reversal for *amicus curiae* Ohio AFL-CIO.

*Baker & Hostetler LLP*, *David C. Levine, Daniel J. Guttman* and *Stephen D. Brown*, urging affirmance for *amicus curiae* Ohio Public Transit Association.

————————————