OPINION
{¶ 1} Appellant, Madison Local School District Board of Education (the Board), appeals from the judgment entry of the Lake County Court of Common Pleas denying its motion to vacate an arbitration award granted in favor of appellee, OAPSE/AFSME Local 4, AFL-CIO and its Local #238 (the Union). We affirm.
 {¶ 2} The instant matter came before the trial court on the Union's motion to confirm a final and binding arbitration award pursuant to R.C. 2711.09 and the Board's *Page 2 
application to vacate the same pursuant to R.C. 2711.13. The merits of the dispute involve a labor grievance filed by the Union pursuant to the parties' collective bargaining agreement (CBA). In its grievance, the Union contended that the Board violated the parties' CBA when it reduced the hours of work for certain transportation employees pursuant to a projected fiscal shortfall that did not exist at the time of the reduction and, ultimately, never materialized. The relevant facts are as follows:
 {¶ 3} In late 2005, the financial outlook for the Madison Local School District was bleak. After the failure of several levies, the five-year forecast projected a financial deficit beginning in fiscal year 2007. In the interest of avoiding educational cuts, the Board approved a measure which would eliminate high school busing not mandated by Ohio law. The elimination became effective on January 3, 2006.
 {¶ 4} Rather than reduce the transportation workforce, the Board decided to decrease the hours of certain employees pursuant to Article 6 of the CBA. In doing so, the Board notified the employees in writing and provided them with revised salary notices reflecting the elimination of high school bus routes in compliance with Article 6. The parties subsequently agreed to a mid-year mass bid to re-order all bus routes based upon driver seniority due to the reduction in hours. To that end, the parties entered into a memorandum of understanding (MOU) reflecting their agreement as it related to the transportation department's mid-year mass bid. In December 2005, the mass bid took place ensuring the most senior transportation employees retained their routes with the highest number of hours in light of the elimination of high school busing.
 {¶ 5} After high school busing was eliminated at the beginning of 2006, the Board received an updated financial forecast. The update reflected approximately a *Page 3 
one million dollar surplus from the former five-year forecast. In consideration of the updated report and the financial variance, the Board voted to restore high school busing effective February 21, 2006. All hours of transportation employees were subsequently restored.
 {¶ 6} Notwithstanding the foregoing measures taken by the Board, the Union filed a grievance pursuant to Article 12 of the CBA challenging the reduction in hours. The School District denied the Union's grievance and the matter was sent to final and binding arbitration. Pursuant to the arbitration process, the parties selected an arbitrator to conduct a hearing and issue an award. On June 8, 2007, the matter was heard before the arbitrator. After considering the evidence as well as the parties' post-hearing briefs, the arbitrator sustained the Union's grievance. Although no specific monetary award was issued at the time of the arbitrator's decision, the arbitrator retained jurisdiction to fashion "appropriate remedies upon proof of individual losses."
 {¶ 7} The Board subsequently filed a complaint and motion to vacate the arbitration award in the Lake County Court of Common Pleas. In response, the Union filed a memorandum in opposition to the Board's motion to vacate and filed a counterclaim seeking confirmation of the arbitrator's decision. After considering the parties' relative positions, the trial court filed an order denying the Board's motion to vacate the arbitration award. The Board filed its notice of appeal from this judgment entry and now asserts the following assignment of error:
 {¶ 8} "The trial court erred to the prejudice of the Board in denying its motion to vacate in violation of R.C. 2711.10(D)." *Page 4 
 {¶ 9} Before embarking on an analysis of the merits, we first point out that a court has a "very limited" role in reviewing a binding arbitration award. See, e.g., Major League Baseball Players Ass'n v.Garvey (2001), 532 U.S. 504, 509. The arbitrator is the final judge of both law and facts and we may not substitute our judgment for that of the arbitrator. The Goodyear Tire Rubber Co. v. Local Union No. 200,United Rubber, Cork, Linoleum, and Plastic Workers of America (1975), 42 Ohio St.2d 516, 522. An arbitrator's decision is presumed valid and thus enjoys great deference. Mahoning Cty. Bd. of Mental Retardation Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn. (1986),22 Ohio St.3d 80, 83-84; see, also Assn. of Cleveland Fire Fighters, Local93 of the Internatl. Assn. of Firefighters v. Cleveland,99 Ohio St.3d 476, 479, 2003-Ohio-4278; United Paperworkers Internatl. Union v. Misco,Inc. (1987), 484 U.S. 29, 36-38. This deferential review has been regularly underscored. See The Goodyear Tire Rubber Co, supra; see also, Hillsboro v. Fraternal Order of Police, Ohio Labor Counsel,Inc. (1990), 52 Ohio St.3d 174, 177 (holding when a provision in a collective bargaining agreement is subject to more than one reasonable interpretation, an arbitrator's interpretation and not that of the reviewing court governs the rights of the parties); Findlay City SchoolDist. Bd. of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132
(holding after it determines that an arbitrator's award "draws its essence" from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award is at its end.)
 {¶ 10} Judicial deference in arbitration cases is fundamentally based on the recognition that the parties have contracted to have their dispute settled by an arbitrator they have chosen in lieu of committing the matter to the courts. Misco, supra, 37-38. It *Page 5 
therefore stands to reason that the parties have agreed to accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome. Id. As a result:
 {¶ 11} "[c]ourts *** do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those facts simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. *** If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." Id. at 38; accordSouthwest Ohio Regional Transit Authority v. Amalgamated Transit Union,Local 627, 91 Ohio St.3d 108, 109, 2001-Ohio-294.
 {¶ 12} It follows that the request for judicial intervention should be resisted even where the arbitrator has ostensibly made "`serious,' improvident' or `silly' errors in resolving the merits of the dispute."Michigan Family Resources, Inc. v. Service Employees Internl. UnionLocal 517M (C.A. 6, 2007), 475 F.3d 746, 753, citing Misco, supra. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,***" a court may not vacate the arbitrator's determination Misco, supra, at 38.
 {¶ 13} Keeping in mind these restraints, "R.C. 2711.10 limits the review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the *Page 6 
arbitrator exceeded his authority." The Goodyear Tire Rubber Co., supra, at paragraph two of the syllabus. In an arbitration involving a collective bargaining agreement, an arbitrator exceeds his or her authority only when the award fails to draw its essence from the collective bargaining agreement. Southwest Ohio Regional TransitAuthority v. Amalgamated Transit Union (1998), 131 Ohio App.3d 751, 760. An award draws its essence from the agreement when it is not arbitrary, capricious, or unlawful and there is a rational nexus between the award and the agreement. Mahoning Cty. Bd. of Mental Retardation Developmental Disabilities, supra, at paragraph one of the syllabus.
 {¶ 14} Appellant sets forth six sub-issues in support of its sole assignment of error. Each issue is premised upon appellant's belief that the arbitrator's award violates R.C. 2711.10(D), which permits a court to vacate an award if "[t]he arbitrator[] exceeded [his or her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." We shall address each issue in turn.
 {¶ 15} Appellant's first issue asserts the trial court's judgment should be reversed because the arbitrator failed to consider appellant's management rights under Article 1(C) of the CBA. Article 1(C)(1) essentially provides that appellant's management rights are limited only by the express terms of the CBA. Appellant contends that because there is no provision in the CBA that prevents it from reducing employee hours, it retained the management right to reduce the hours of transportation employees in a time of financial crisis. *Page 7 
 {¶ 16} Contrary to appellant's position, it is clear the arbitrator considered Article 1(C)(1) in rendering his award. In his "Arbitration Opinion and Award," the arbitrator set forth the relevant portions of the CBA, including Article 1(C)(1). After considering this provision, the arbitrator found appellant's authority to reduce hours was, under the circumstances of this case, limited by Article 3(C)(2). Article 3(C), which will be discussed in greater detail infra, governs situations in which the Board may reduce its workforce. Pursuant to Article 3(C)(2), the Board may properly reduce the workforce if the reduction is premised upon "economic reasons." Throughout the grievance process, including this appeal, the Board has consistently premised its decision to reduce hours upon the purported "financial crisis" which it believed imminent but never materialized. In doing so, the Board implicitly recognizes its power was limited to this specific condition in the CBA. This alone renders the Board's Article 1(C)(1) argument meritless.
 {¶ 17} Further, after considering the Board's position that the predicted "economic crisis" permitted its actions, the arbitrator reasonably concluded he was:
 {¶ 18} "constrained to recognize that the financial crisis that triggered [appellant's] sweeping decision was a misperception. ***
 {¶ 19} "There is simply no reason why the Grievants should bear the burden of this miscalculation, however innocent it was. The Grievants had agreements that were not subject to dissolution by the unilateral error of the District. Quite on the contrary, they were and are enforceable. Any other conclusion would render the agreements entered via the bidding process illusory. The Board was not free to engage in a wholesale unilateral retreat from its contractual obligations with the drivers just because *Page 8 
it thought it had a financial problem. The reduction implemented by the Board was unwarranted."
 {¶ 20} The arbitrator's conclusion drew its essence from the CBA and his decision was not unlawful, arbitrary, or capricious.
 {¶ 21} Next, the Board asserts this court should reverse the judgment of the lower court because the arbitrator disregarded the Board's express authority to reduce hours under Article 6(B)(1) of the CBA. Article 6 governs "employee days and hours." Subsection (B)(1) provides:
 {¶ 22} "Employees are presumed to work the hours specified in their employment contract. Permanent increases or decreases in contracted time for employees shall be indicated in writing in an adjusted salary notice provided to them. They shall not be paid for any other reported time unless such time is approved by their supervisor."
 {¶ 23} The Board argues this provision afforded it explicit authority to reduce an employee's hours in a financial crisis simply by providing the employee written notice. Thus, because the Board followed the procedures outlined in the foregoing provision, it asserts the arbitrator ignored Article 6(B)(1) in drawing his conclusion. We disagree.
 {¶ 24} At the arbitration hearing, the Board argued Article 6(B) gave it the authority to reduce hours upon notice. However, it premised the reduction in hours on the purported financial crisis it had projected. The Board specifically stated the issue as follows:
 {¶ 25} "The issue before the arbitrator today is whether the Board's decision to reduce the hours of the transportation department employeespursuant to the *Page 9 
elimination of high school busing in a financial crisis was permissible under the collective bargaining agreement ***." (Emphasis added).
 {¶ 26} The issue the Board put before the arbitrator was whether the CBA permitted the reduction of hours when the reduction is premised upon the elimination of busing in a financial crisis. In the abstract, such a reduction may be permitted under the CBA. However, according to the Board, a necessary precondition for its action was the existence of a financial crisis. In other words, the Board admittedly drew its authority to reduce hours from the purported financial crisis. As it is undisputed that there was no actual financial crisis, the arbitrator concluded the CBA did not authorize the Board's actions.
 {¶ 27} With this in mind, we recognize that under Article 6(B), the Board may permanently increase or decrease contracted time as long as it does so in writing with a notice of salary adjustment. However, as just discussed, the issue, as it was framed by the Board, was whether the CBA permitted the reduction even when it is premised upon an erroneously projected financial crisis. The Board's argument that it was justified in acting as it did, presupposes that Article 6(B) must be read in conjunction with Article 3(C), which sets forth the valid reasons, including "economic reasons," for reducing workforce. The Board's argument tacitly acknowledges that Article 6(B) may not be read in a vacuum but must be interpreted in the context of Article 3(C). That is, irrespective of the language of Article 6(B), the Board must support its decision to reduce with one of the reasons set forth under Article 3(C). The arbitrator accepted the Board's invitation to read the CBA in this context and concluded that without an actual economic crisis, the Board's decision was invalid under the agreement. *Page 10 
 {¶ 28} A review of the arbitrator's award does not compel the conclusion that Article 6(B)(1) was disregarded. The arbitrator cited Article 6(B) in his decision as a provision germane to the proceedings and consequently considered its import in relation to other relevant provisions. The arbitrator's decision not only drew its essence from the CBA but also answered the very question posed by the Board. Simply because the arbitrator resolved this question in the Union's favor does not imply he transcended his authority by resolving a dispute not committed to arbitration.
 {¶ 29} Next, the Board asserts this court should reverse the trial court's confirmation because the arbitrator failed to consider its authority to reduce hours under Article 3(C). We again disagree.
 {¶ 30} As just discussed, the arbitrator specifically found that because the expected financial crisis never occurred, the Board was not authorized to cut employee hours. Under Article 3(C), which the Board maintains is applicable to this case, there must be "economic reasons" justifying the reduction. The arbitrator recognized that the Board premised its reduction in hours upon a potential economic crisis. However, this economic projection was based upon a significant miscalculation regarding the district's fiscal stability. Had the Board possessed a more accurate fiscal projection, there would have been no reductions. Accordingly, the arbitrator determined the purported "economic reasons" for the reductions were illusory and insufficient to justify the cuts pursuant to Article 3(C)(1).
 {¶ 31} We acknowledge that Article 3(C)(1) does not explicitly require an actual economic crisis. The phrase "economic reasons" may therefore legitimately encapsulate perceived, projected, or actual economic downturns. Nevertheless, the *Page 11 
arbitrator chose to interpret Article 3(C) as mandating a manifest economic crisis. While our reading of the contract may differ from that of the arbitrator, "`[t]he arbiter was chosen to be the Judge. That Judge has spoken. There it ends.'" The Goodyear Tire Rubber Co., supra, at 523, quoting Safeway Stores v. American Bakery ConfectionaryWorkers, Local 111 (C.A. 5, 1968), 390 F.2d 79, 84. The arbitrator drew the conclusion from the terms of the CBA and, in doing so, did not render an unlawful, arbitrary capricious award.
 {¶ 32} The Board next argues the trial court's judgment should be reversed because the arbitrator failed to consider additional agreements of the parties set forth in the MOU. We again disagree.
 {¶ 33} In his "Opinion and Award," the arbitrator set forth the provisions of the MOU in their entirety. It is therefore evident that he considered its contents in rendering his findings and award. In light of this, the MOU provided:
 {¶ 34} "This agreement does not eliminate in any way the Union's opportunity to pursue grievances and its remedies relating, but not limited to the Board's `reduction in contracted hours' and its implementation."
 {¶ 35} Thus, regardless of its other provisions, the MOU did not affect appellee's right to pursue a grievance before an arbitrator pursuant to the CBA. To the extent appellees properly filed a grievance under the CBA, the MOU was irrelevant.
 {¶ 36} The Board's final arguments are related. They assert this court should reverse the trial court's order because (1) the arbitrator's award "wholly departs" from the CBA and (2) the arbitrator clearly exceeded the scope of his authority under the CBA. Under these arguments, the Board asserts that the arbitrator's decision runs afoul *Page 12 
of the CBA as it essentially requires the Board to obtain appellee's consent whenever a reduction in hours or force may be necessary. Without consent, the arbitrator's decision gives appellees a mechanism for challenging such reductions with the "benefit of 20-20 hindsight." The Board maintains nothing in the CBA obligates the Board to confer with the Union regarding its decisions to reduce workforce or reduce hours. In the Board's view, it may justifiably reduce workforce if it possesses an "economic reason" for doing so and it may properly modify employee hours where proper notice is given.
 {¶ 37} While much of the Board's argument is accurate, we nevertheless are constrained to point out that the arbitrator's decision drew its essence from the CBA and was responsive to the issue posed for arbitration. That is, he construed and applied the CBA and acted within the scope of his authority in doing so. The arbitrator did not ignore or fail to consider the relevant provisions of the CBA and, even if we disagreed with the arbitrator's analysis or specific interpretation of the relevant articles in the CBA, we cannot review the merits of the arbitration award or "second guess" his analysis of the contract.The Goodyear Tire Rubber Co., supra, at 520. To the extent there is no evidence of fraud, corruption, misconduct, an imperfect award, or that the arbitrator otherwise exceeded his authority, we are compelled to affirm the trial court's determination.
 {¶ 38} Applying our limited standard of review, we hold the arbitrator applied the proper provisions of the CBA in order to resolve the issue proposed for arbitration and arrived at a conclusion which is neither arbitrary, capricious, nor unlawful. Given the limited standard we must follow in reviewing an arbitration award, we are compelled to overrule the Board's sole assignment of error. *Page 13 
 {¶ 39} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is therefore affirmed.
MARY JANE TRAPP, P.J., TIMOTHY P. CANNON, J., concur. *Page 1