[Cite as *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2017-Ohio-888.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| PORTAGE COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2016-P-0032** |
| - vs - | : | |
| PORTAGE COUNTY EDUCATORS' ASSOCIATION FOR DEVELOPMENTAL DISABILITIES, | : | |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2014 CV 00432.

Judgment: Reversed.

*Ronald J. Habowski*, 1931 Basswood Drive, Kent, OH 44240 (For Plaintiff-Appellee).

*Ira J. Mirkin*, and *Charles W. Oldfield*, Green, Haines & Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH 44503 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}  Appellant, the Portage County Educators' Association for Developmental Disabilities ("Association"), appeals the decision vacating the arbitrator's award in its favor. We reverse the trial court's decision and reinstate the arbitration award.

{¶2}  The Association entered a collective bargaining agreement ("Agreement") with appellee, the Portage County Board of Mental Disabilities ("Board"), for the terms

and conditions governing the Association's members' employment. In the fall of 2008, the Board posted a job opening for an Account Clerk 1 in its transportation department. Patricia Byttner applied and was hired. The job description indicates that the job duties for the position were clerical only. However, the parties disagree as to whether Byttner was informed before she was hired that the Board expected her to occasionally fill in as a substitute bus driver and bus aid.

{¶3} Notwithstanding, after she was hired, Byttner was occasionally asked to fill in as a substitute bus driver, which she agreed to do. However, she suffered from knee and back problems, and as such, did not wish to continue acting as a substitute bus driver and did not believe that her job required her to act in that capacity.

{¶4} In 2012, the Board changed Byttner's job description by adding language stating that an Account Clerk 1 in the transportation department is required to serve as a vehicle operator and vehicle attendant on an as-needed basis. In light of this change, the Association filed a grievance on Byttner's behalf. The Board denied the grievance and the matter proceeded to arbitration.

{¶5} Following the arbitration hearing, the arbitrator agreed with the Association in part and concluded:

{¶6} "The grievance is sustained in part regarding that the Board violated Article 7.C.1 of the Agreement when it arbitrarily added a designated duty wholly unrelated to her Account Clerk 1 classification, instead of increasing job duties as permitted by the Agreement. The Board is directed to remove said designated duty from job description of Account Clerk 1.

{¶7}  "However, in this particular situation the grievance is also denied in part based on Byttner's volunteering to serve as a bus driver or aide for the Employer on a temporary or emergency basis during her application/hiring process as well as her periodic willingness to fill in on limited occasions since being hired in 2008.  The Grievant cannot arbitrarily renege on a commitment made when hired and upon which the Board reasonably relied upon her on an emergency/last resort basis.  However, if the Grievant provides the Employer with current medical documentation sufficiently demonstrating that she is medically unfit and precluded from periodically serving as a bus driver or aide, her obligation to 'fill-in' on a temporary and emergency basis needs to be evaluated by the Board."

{¶8}  The arbitrator explained that by adding bus driving duties to the Account Clerk 1 position, the Board acted arbitrarily and capriciously by unilaterally increasing the job duties beyond the reasonable scope of the job duties normally associated with a clerical position.

{¶9}  The Board filed an application with the trial court to vacate the arbitrator's award arguing that the arbitrator exceeded his authority, and the Association sought confirmation of the decision.  The court agreed with the Board and vacated the arbitration decision.  The Association appeals and asserts one assigned error:

{¶10}  "The trial court erred when it found the arbitrator exceeded his authority and vacated the arbitration award."

{¶11}  A court of common pleas can only review binding arbitration awards for a limited number of reasons, and it must base its decision solely on the arbitration record. *Arrow Uniform Rental, LP v. K&D Group, Inc.*, 11th Dist. Lake No. 2010-L-152, 2011-

Ohio-6203, ¶32, 35. Moreover, "[t]he arbitrator is the final judge of both the law and the facts, and a court may not substitute its judgment for that of the arbitrator. * * * Judicial deference in arbitration cases is based on a recognition that the parties have agreed to have their dispute settled by an arbitrator rather than the courts and 'to accept the arbitrator's view of the facts and the meaning of the contract regardless of the outcome of the arbitration.'" (Citations omitted.) *Id.*, at ¶35-36.

{¶12} Further, the Ohio Supreme Court has repeatedly emphasized that ""[i]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts."" *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131, 551 N.E.2d 186 (1990), citing *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986).

{¶13} R.C. 2711.10 dictates the limited standard of review for a court of common pleas to employ upon addressing an application to vacate an arbitration award. And our review is confined to the order issued by the common pleas court confirming, modifying, vacating or enforcing the award, and we review the trial court's order confirming or vacating the arbitration decision for errors occurring as a matter of law. *Arrow Uniform Rental, L.P. v. K&D Group, Inc.*, 11th Dist. Lake No. 2010-L-152, 2011-Ohio-6203, ¶43; *Akron Metro. Hous. Auth. v. Local 2517, Am. Fedn. of State, Cty., & Mun. Emp., AFL-CIO*, 161 Ohio App. 3d 594, 2005-Ohio-2965, 831 N.E.2d 493 (9th Dist.), cause dismissed, 106 Ohio St. 3d 1515, 2005-Ohio-4803, 834 N.E.2d 356; *Creatore v. Robert W. Baird & Co.*, 154 Ohio App. 3d 316, 2003-Ohio-5009, 797 N.E.2d 127 (7th Dist.).

4

Our review is not, however, a de novo review of the merits of the dispute as presented to the arbitrator. Instead, we review the trial court's decision de novo to determine whether any of the limited grounds contained in R.C. 2711.10 regarding a motion to vacate exist. *Arrow Uniform Rental, L.P.* at ¶44. Thus, we overrule this district's prior decisions holding that our standard of review in arbitration appeals is for an abuse of discretion. *Marshall v. Colonial Ins. Co. of California*, 11th Dist. Trumbull No. 2007-T-0013, 2007-Ohio-6248, ¶14; *Citigroup Global Markets, Inc. v. Masek*, 11th Dist. Trumbull No. 2006-T-0052, 2007-Ohio-2301, ¶18.

{¶14} R.C. 2711.10, *Court may vacate award*, states:

{¶15} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration *if*:

{¶16} "* * *

{¶17} "(D) *The arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (Emphasis added.)

{¶18} Upon considering an application under R.C. 2711.10(D), courts are limited to determining whether an arbitration award "draws its essence from the CBA. * * * An award draws its essence from the CBA when there is a rational nexus between the CBA and the award." (Citations omitted.) *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 2001-Ohio-294, 742 N.E.2d 630 (2001). A reviewing court's inquiry must end upon finding a rational nexus. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132–133, 551 N.E.2d 186 (1990).

5

{¶19} An arbitrator is confined to interpreting and applying the governing collective bargaining agreement, and he or she may secure guidance from many sources. *Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Assn., Local 11, AFSCME*, 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1990) citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358 (1960). The arbitrator's award must be confirmed if his or her "award was reached in a rational manner from the collective bargaining agreement[,]" and must be vacated if the decision "conflicts with" the express provisions of the agreement. *Id.* at 181; R.C. 2711.10. Thus, an arbitrator exceeds his or her authority when an award clearly departs from the express language employed in the parties' agreement. *Id.* And the trial court is precluded from reversing an arbitrator's decision based on its disagreement with the arbitrator's contract interpretation. *Southwest Ohio Reg. Transit Auth.* at 110.

{¶20} The applicable Agreement in this case includes the following provisions governing the Board and the Association's interactions:

{¶21} Article 1. section A. "Recognition," states in part:

{¶22} "1. The Bargaining Unit shall include all Food Service and Clerical employees * * *.

{¶23} "2. The Bargaining Unit does not include: Transportation * * * ."

{¶24} Article 3. section B. "Board Rights," states in part:

{¶25} "1. The Portage County Board of Developmental Disabilities, on its own behalf and on behalf of the electors of the County, hereby retains and reserves unto itself, without limitation, all powers, rights, authority, duties and responsibilities conferred

6

upon and vested in by the laws and Constitution of the State of Ohio and the United States, including, but without limiting, the generality of the foregoing rights:

{¶26} "* * *

{¶27} "b.   To hire all employees and, subject to the provisions of law, to determine their qualifications and conditions for their continued employment or their dismissal or demotion; and to assign, promote, and transfer all such employees;

{¶28} "c.   To decide upon the means of instruction and the duties, responsibilities, and assignments of instructors and all other employees with respect thereto, and respecting each individual employee's right of academic freedom.

{¶29} "* * *

{¶30} "The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and discretion in connection therewith shall be limited only to the specific and express terms of this complete Contract."

{¶31}  Article 4. "Grievance Procedure" provides in part under subsection D. 4:

{¶32} "The decision of the arbitrator shall be binding on all parties.   The arbitrator shall not have the authority to add to, subtract from, modify, change, or alter any of the provisions of the Collective Bargaining Agreement, nor add to, detract from, or modify the language therein in arriving at a determination of any issue presented that is proper within the limitations expressed herein.

{¶33} "The arbitrator shall expressly confine himself/herself to the precise issue(s) submitted for arbitration and shall have no authority to determine any other

issue(s) not so submitted to him/her, or to submit observations or declarations of opinion which are not directly essential in reaching the determination.

{¶34} "The arbitrator shall not fashion any remedy which directly changes the intent and purpose of the Contract provision(s) being grieved."

{¶35} Under Article 7. A., "PROMOTIONS AND VACANCIES," the Agreement states in part:

{¶36} "1. A 'vacancy' shall be defined as the resignation, retirement, death, promotion, transfer, termination, or discharge of an employee, or the creation of a new bargaining unit position. Bargaining unit vacancies and promotions shall be posted internally for five (5) days on a conspicuous bulletin board in each building and a copy delivered to the PCEAMR President. Such posting shall include the job description and qualifications for the vacant position."

{¶37} It also provides under subsection 7. C. "JOB DESCRIPTIONS,"

{¶38} "1. Job descriptions for all positions will be completed and compiled by the Superintendent and/or Designee. Job descriptions will be given to each employee prior to employment, or when changed; and will be available for inspection to the PCEAMR. These job descriptions shall include minimum qualifications, Essential Functions, duties, responsibilities, and the job title. ***The job duties of an employee may only be increased once in any twelve (12) month period, unless the employee in that position agrees to more than one (1) increase***. Within fifteen (15) days of any increase in duties said increase shall be incorporated into the job description and a copy given to the employee." (Emphasis added.)

{¶39} "Essential Functions" is not defined in the Agreement.

8

{¶40} There are no other terms or provisions in the Agreement delineating how, when, or to what extent an employee's job duties can be increased.

{¶41} The job description provided to Byttner upon her hiring describes a clerical position requiring bookkeeping and computer experience. The Account Clerk 1 position description states that it requires the employee to coordinate dispatch activities, but it does not indicate that the position encompasses driving a school bus or acting as a bus aide. As for the working conditions, the job description states that an Account Clerk 1 will be in an office and subject to long periods of sitting and viewing a computer monitor. The qualifications also state that the position holder must also be able to stoop, lift, and bend to perform routine clerical duties.

{¶42} This appeal and the arbitrator's decision center on the application and interpretation of Section 7.C.1 of the Agreement. If the arbitrator's decision is not contrary to the express provisions of the agreement and is rationally based on the words the parties chose to govern their conduct, then the trial court was required to confirm his decision even if the trial court disagreed with the arbitrator's construction of the terms.

{¶43} It is unquestioned that the Board is permitted to increase an Account Clerk 1's job duties once per year under Section 7.C.1. What is disputed and is unclear under the Agreement is the extent to which the Board can increase an Account Clerk 1's job duties.

{¶44} The Agreement does not employ language limiting the Board's scope of authority to increase an employee's job duties. However, the Agreement likewise does not include language stating the board has unfettered authority to increase an

9

employee's job duties. It merely states: "The job duties of an employee may only be increased once in any twelve (12) month period, unless the employee in that position agrees to more than one (1) increase."

{¶45} Thus, in light of the absence of express contractual language dictating the actual extent of the Board's authority to increase one's job duties, the arbitrator construed the parties' Agreement and found a reasonableness limitation requiring that any unilateral increase in the Account Clerk 1's job duties imposed by the Board must be clerical in nature or in the realm of job duties typically characteristic of a designated job. The arbitrator noted that the Board employees who regularly drive the buses are subject to a separate collective bargaining agreement with the Board. And although he acknowledged that the Board can increase its employees' duties once annually, the increase in those duties must be related to the type of duties that the employee already performs. Moreover, the arbitrator explained that just because a person employed as an Account Clerk 1 knows how to change the oil on a school bus, this is not the type of increase in job duties that naturally flows from the Account Clerk 1 position.

{¶46} Accordingly, because the Agreement does not actually address the extent of the Board's scope of authority to increase an Account Clerk 1's job duties, the trial court erred in finding that the arbitrator exceeded his authority in imposing reasonable limits that he drew from the essence of the parties' Agreement.

{¶47} In *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 556 N.E.2d 1186 (1990), the Supreme Court reversed the appellate court and trial court decisions vacating the arbitrator's decision explaining,

{¶48} "When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties thereto. This is so because the arbitrator's interpretation of the contract is what the parties bargained for in agreeing to submit their disputes to final and binding arbitration. *The arbitrator's interpretation must prevail regardless of whether his or her interpretation is the most reasonable under the circumstances.*

{¶49} "The continued vitality of the arbitration system of dispute resolution can only be ensured through judicial restraint. Not only must a reviewing court limit its inquiry for purposes of vacating an arbitrator's award in accordance with the requirements in *Findlay,* [supra,] but *a reviewing court also must be sensitive to upholding an arbitrator's award whenever it is possible to do so.*" (Emphasis added.) *Id. at* 177-178.

{¶50} Accordingly, the trial court should have confirmed the arbitrator's award as it was rationally derived from his interpretation of the collective bargaining agreement. Further, the arbitrator's decision finding that the Board's imposition of additional job duties must be rationally related to the Account Clerk 1 job description does not conflict with the express terms of the Agreement. Thus, the trial court erred by vacating the arbitrator's decision and in imposing its interpretation of the Agreement in place of the arbitrator's.

{¶51} The Association's sole assigned error has merit, and the trial court's decision vacating the arbitrator's decision is reversed, and the arbitration award is reinstated.


CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.